## FREEDMAN'S SAVING AND TRUST COMPANY v. SHEPHERD.

## SHEPHERD v. THOMPSON.

APPEALS FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Nos. 230, 256. Argued April 17, 18, 1888. — Decided April 30, 1888.

When a mortgage contains no provision for the payment of rents and profits to the mortgagee while the mortgagor remains in possession, the mortgagee is not entitled, — as against the owner of the equity of redemption, — to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf; even though the income may be expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon failure by the mortgagor to perform the conditions of the mortgage.

Section 3737 of the Revised Statutes respecting the transfer of contracts with the United States does not embrace a lease of real estate, to be used for public purposes, under which the lessor is not required to perform any service for the government, and has nothing to do, in respect of the lease, but to receive from time to time the rent agreed to be paid.

When the government, as lessee of real estate occupied by it, recognizes through its proper officers a transfer of the property and an assignment of the lease, and an assignment of rent under it, and pays the rent, there is nothing in § 3477 Rev. Stat. respecting transfers and assignments of claims against the United States which invalidates that transaction for the benefit of a third party.

THE court stated the case as follows:

These consolidated causes involve the conflicting claims of the parties: *first*, to the proceeds of two drafts, one for $1800, and the other for $3475, issued by the United States Treasury in payment of the rent of lot four, square three hundred and seventy-seven, with the improvements thereon, in the city of

Washington, and made payable to the order of A. C. Bradley, to the use of Alexander R. Shepherd, to the use of George Taylor, Peter F. Bacon, and Samuel Cross, trustees; *second*, to a balance of $787.50 in the hands of A. C. Bradley, who was appointed, in the first of the above named causes, receiver of said premises with authority to collect the rents due and to become due for use and occupation of the same by the United States.

The final decree awarded the proceeds of the two drafts to Thompson, appellee in each of the causes, and the money in the hands of the receiver to the trustees of Shepherd. Of that decree both the Freedman's Savings and Trust Company and Shepherd complain.

This controversy has been greatly tangled by an unusual number of pleadings, affidavits, motions, rules and orders. But the facts, so far as it is necessary to state them, are as follows:

The Freedman's Savings and Trust Company (to be hereafter called the Trust Company) sold and conveyed this property to A. C. Bradley; and for the unpaid purchase money the latter executed his five several notes for $2400, $2650, $2900, $3150, and $5900, payable in one, two, three, four and five years from June 9, 1873, with interest at eight per centum per annum, payable semiannually.

For the purpose of securing the payment of those notes Bradley, by deed of trust, in the nature of a mortgage, duly recorded on the 18th of June, 1873, conveyed the property to John W. Alvord and George W. Stickney, together with "all the improvements, ways, easements, rights, privileges, appurtenances, and hereditaments" appertaining to the same, and "all the estate, right, title, interest, and claim whatsoever, either at law or in equity," of the grantor in the premises, in trust to permit Bradley, his heirs or assigns, to use and occupy the premises, and take the rents, issues, and profits thereof to their sole use and benefit, "until default be made in the payment of said notes or any of them, or any instalment of interest due thereon, or any proper cost, charges, commission, half commission, or expense in and about the same;" and

upon the further trust, such default having occurred, to sell the property at public auction, after at least twenty days' notice of the time, place, and terms of sale, and convey the same in fee simple to the purchaser.

Prior to the execution of this deed, Bradley, by a formal instrument of writing, to which the Postmaster General was a party, had leased the premises to the United States, at an annual rent of $4200, for the term of three years from June 5, 1873, with the privilege to the government of extending the term for two additional years. On the 27th of August, 1874, he conveyed to Alexander R. Shepherd; and, on the 21st of November of the same year, gave written notice to the Postmaster General of Shepherd's purchase. He also assigned and transferred the lease to the latter, with authority to collect the rent.

It should be stated in this connection that in his purchase Bradley really represented Shepherd, the latter verbally assuming to pay the notes given to the Trust Company.

On the 15th of November, 1876, Shepherd made a conveyance to George Taylor, Henry A. Willard, (who was succeeded by Peter F. Bacon,) and Samuel Cross, of a large amount of property, *including the premises in controversy*, in trust to secure his three notes of $100,000 each. That conveyance contained a covenant upon the part of Shepherd that all the rents, profits, issues, and proceeds of the trust property coming to his hands should be applied by him solely to the benefit and advantage of the creditors whose debts were secured by the deed.

The rent reserved for the year ending June 30, 1876, not having been paid, Shepherd caused suit to be brought in the Court of Claims, in the name of Bradley, against the United States, to the use of Taylor, Bacon, and Cross, trustees. In that suit judgment was rendered against the government for only $1800, and was affirmed by this court at its October term, 1878. *Bradley* v. *United States*, 98 U. S. 104. Pending the appeal in that case a second suit was brought for the rent reserved for the years ending June 30, 1877, and June 30, 1878. But the decision in the first suit rendered the further prosecution of the second suit unnecessary.

In consideration of the indebtedness described in a deed executed by Shepherd, March 10, 1873, to William Thompson, as trustee, Bradley and Shepherd, by writing, dated June 21, 1877, pledged the demand against the United States for use and occupation of these premises, as security for the payment of said indebtedness, with interest thereon at the rate of eight per cent per annum until paid; and, in the same instrument, " covenanted and agreed that any draft or check issued in payment or part payment of said claim shall be indorsed and delivered to the trustee named in said trust, and the proceeds thereof, less all proper costs and charges, be applied to the payment of the said indebtedness, with interest as aforesaid, or to so much thereof as the sum or sums of money so received is or are sufficient to pay." To this pledge and agreement the trustees named in Shepherd's deed of the 15th of November, 1876, gave their written assent.

The premises having been advertised to be sold on the 3d of August, 1877, under the deed of trust of June 18, 1873, because of default in the payment of interest and principal, Shepherd and the trustees in the deed of November 15, 1876, instituted, August 2, 1877, a suit of equity, being the first named of the above causes, to enjoin the sale. The ground alleged for the injunction was the pendency of a suit brought by Mrs. Mc-Ghan and Edward Clark, her trustee, (*Clark* v. *Trust Company,* 100 U. S. 149,) which involved the title of the Trust Company to the property conveyed to Bradley, and by the latter to Shepherd. A temporary injunction of the character asked was granted. The Trust Company answered the original bill. It also filed, October 25, 1887, its cross-bill against the plaintiffs, in which, after alleging the insolvency of Shepherd and Bradley, its fear that the property would not sell for enough to pay the debts secured by the mortgage, and the taxes on it, and asserting the right of its creditors to have the rents thereof applied to its claims, in preference to the debts held by other creditors of Shepherd, it prayed that Shepherd, Taylor, Cross, and Bacon be perpetually restrained from applying for or receiving any rents or sums of money due from the United States on account of the use and occupation

of the premises, until the final determination of this cause and of the equity suit brought by Mrs. McGhan and Clark; and that a receiver be appointed to collect the rents due from the United States on account of the use and occupation of the premises.

On the 18th of March, 1878, the case was heard on the motion of the Trust Company for a receiver and an injunction, and an order was made enjoining the complainants, "from collecting or receiving any moneys or other thing of value from the United States on account of the lease made between the United States and A. C. Bradley, and bearing date June 6, 1873, for the premises involved in this cause."

On the 12th of March, 1879, the Trust Company, by petition, asked the appointment of a receiver to take charge of the property and to collect the rents, during and after its occupancy by the government, and that Shepherd and his co-complainants be enjoined from receiving from the United States any of said rents.

On the 10th of May, 1879, the cause was heard upon the matters embraced in that petition, and on motion of the Trust Company, and with the consent of the other parties, Bradley was appointed receiver in the cause. He was directed to take charge of the property, and collect the rents therefor, "excepting, however, the rents accrued and to accrue from the 6th day of June, 1878, to the 1st day of July, 1879, which have been or are to be collected and received by the said Alexander R. Shepherd or his assigns." It was further ordered that the parties be enjoined from applying for or receiving any moneys due or to become due on account of the use and occupation of the premises, save and except the rents for the period just named.

Subsequently, upon the petition of Bradley, as receiver, Nathaniel Wilson was made a party to the cause — he having, in his capacity as an attorney, received the proceeds of the draft for $1800 issued by the United States in discharge of the judgment for the rent of the premises for the year ending June 30, 1876, and a draft for the rent accruing after that date and up to June 6, 1878. Wilson appeared and answered,

stating that he held the proceeds of the draft for $1800, less certain sums deducted therefrom, and, also, the draft for $3475, subject to the order of the court.

John W. Thompson filed a petition praying leave to intervene for the protection of his interests. This petition was afterwards withdrawn, and he instituted an original suit — the second of the above named causes — against Bradley, Shepherd, the Trust Company, the trustees in Shepherd's deed of November 15, 1876, William Thompson, the trustee in the deed of March 10, 1873, and Nathaniel Wilson. From the pleadings and evidence in that suit it appears that Thompson holds Shepherd's two notes of $7000 and $8000, on which, at the time he sued, there was due a balance of $11,677.28, with interest at the rate of 8 per cent per annum on $8000 thereof from March 10, 1875, and on $3677.28 from June 22, 1875. These notes constituted the indebtedness referred to in the deed of trust to William Thompson, to secure the payment of which, Bradley and Shepherd, with the consent of the latter's trustees, executed the writing of June 21, 1877. Thompson's suit was consolidated with the one brought by Shepherd.

On the 18th of January, 1880, the restraining order made August 2, 1877, in Shepherd's suit, was set aside; and, on the 28th of February, 1880, the property having in the meantime been sold under Bradley's deed and purchased by the Commissioners of the Trust Company — leaving due on Bradley's notes more than $11,000 — the receiver was directed to deliver possession to the Commissioners, who were authorized to apply for, collect, and receive the rents, issues and profits of the property thereafter falling due.

The amount of rent collected by the receiver, less his commission, was $787.50. The amount in the hands of Wilson, including the draft for $3475, was $4675.

The final decree was of the character indicated in the beginning of the opinion. In respect to the draft for $3475, the decree required Bradley, Shepherd, Taylor, Bacon and Cross to indorse the same, and directed its collection by Wilson, and the payment by him to Thompson of the proceeds, together

with the balance in his hands of the $1800 draft. It was further ordered that the $787.50 in the hands of the receiver be paid to the trustees of Shepherd.

*Mr. William H. Mattingly* for Shepherd. *Mr. A. C. Bradley* was with him on the brief.

*Mr. Enoch Totten* for the Freedman's Savings and Trust Company.

*Mr. H. H. Wells* and *Mr. Martin F. Morris* for Thompson.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

What rights did the Trust Company acquire, under Bradley's deed, in respect to the income or rents of the mortgaged property, accruing after the execution of that instrument? This is the principal question presented for our consideration, and will be first examined.

In *Gillman v. Ill. & Miss. Tel. Co.,* 91 U. S. 603, 616, the question was as to the disposition of certain earnings of a railroad, accruing after a decree of foreclosure and sale, and before the purchaser at the sale was let into possession. The first, in point of time, of the mortgages conveying the property to secure the company's bonds, provided, among other things, that it might remain in possession and operate the road, enjoying the revenues thereof, until default occurred in paying the interest or the principal of its bonds at maturity; and if such default continued six months, or if the company failed to set apart, deposit, and apply certain moneys, as required by the mortgage, then the trustees might, and it should be their duty, to enter upon and take possession of and, by agents, operate the mortgaged property. The second mortgage contained substantially the same provisions. After the decree of foreclosure and sale was passed, a judgment creditor of the company, proceeding under the local law, garnished, in the hands of the company's agents at its various stations, moneys received by them from the operation of the road, the company'

having been permitted to remain in possession up to the time of the sale under the decree. The trustees in the mortgage claimed that these moneys should be applied in payment of the balance remaining unpaid on their mortgage bonds. This claim was denied. The court — following the previous case of *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459 — said: "It would have been competent for the court *in limine*, upon a proper showing, to appoint a receiver and clothe him with the duty of taking charge of the road and receiving its earnings, within such limit of time as it might see fit to prescribe. It might have done the same thing subsequently, during the progress of the suit. When the final decree was made, a receiver might have been appointed, and required to receive all the income and earnings until the sale was made and confirmed, and possession delivered over to the vendee. Nothing of this kind was done. There was simply a decree of sale. The decree was wholly silent as to the possession and earnings in the meantime. It follows that neither, during that period, was in any wise affected by the action of the court." Again: "It is clearly implied in these mortgages that the railroad company should hold possession and receive the earnings until the mortgagees should take possession, or the proper judicial authority should interpose. Possession draws after it the right to receive and apply the income. Without this the road could not be operated, and no profit could be made. . . . If the mortgagees were not satisfied, they had the remedy in their own hands, and could, at any moment, invoke the aid of the law, or interpose themselves without it. They did neither."

In *American Bridge Co.* v. *Heidlebach*, 94 U. S. 798, 800, the mortgage included the rents, issues and profits of the mortgaged property, so far as it was necessary to keep it in repair, and pledged such rents, issues and profits to the payment of the interest on the mortgage bonds as it matured, and to the creation of a sinking fund for the redemption and payment of the principal. In the event of a continuous default for six months in meeting the interest, the trustees, upon the written request of the holders of one-half of the outstanding bonds, were authorized to take possession of the mortgaged

premises, and receive all rents and claims due and to become due to the company. In a contest between the trustees and a judgment creditor, as to which was entitled to certain moneys in the hands of the mortgagor, the decision was in favor of the creditor, the court saying : " In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed, and possession delivered to him. In either case, the income would thereafter have been theirs. Until one or the other was done, the mortgagor, as Lord Mansfield said in *Chinnery* v. *Black*, 3 Doug. 390, was ' owner to all the world, and entitled to all the profit made.' "

In *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378, 392, it was held that a bond given on appeal with supersedeas, from a final decree of foreclosure and sale, did not cover rents and profits, or the use and detention of the property, pending the appeal. The court said that " in the case of a mortgage, the land is in the nature of a pledge ; and it is only the land itself — the specific thing — which is pledged. The rents and profits are not pledged ; they belong to the tenant in possession, whether the mortgagor or a third person claiming under him. . . . The taking of the rents and profits prior to the sale does not injure the mortgagee, for the simple reason that they do not belong to him. . . . But perception of rents and profits is the mortgagor's right until a final determination of the right to sell, and a sale made accordingly."

It is, of course, competent for the parties to provide, in the mortgage, for the payment of rents and profits to the mortgagee, while the mortgagor remains in possession. But when the mortgage contains no such provision, and even where the income is expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon the failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken, in his behalf, by a receiver, *Teal* v. *Walker*, 111 U. S. 242 ; *Grant* v. *Phœnix Life Ins. Co.*, 121 U. S. 105, 117 ; or until, in proper

form, he demands and is refused possession. *Dow* v. *Memphis Railroad Co.*, 124 U. S. 652, 654. See also *Sage* v. *Memphis and Little Rock Railroad Co.*, 125 U. S. 361.

The principles announced in these cases are decisive against the claim of the Trust Company to the rents of the property represented by the two drafts delivered by the United States to Wilson. Bradley's deed pledged the property, not the rents accruing therefrom, as security for the payment of his notes. It is true, it provides, generally, that the mortgagor may remain in possession and receive rents and profits, until there is default upon his part. But the only effect of that provision was to open the way to compel him to submit to a sale and thereby lose possession. The deed did not give the mortgagee or the trustees the right, immediately upon such default, to take possession and appropriate the rents of the property. It only gave the trustees authority, when such default occurred, to sell upon short notice, and, in that way, oust the mortgagor, and suspend his right to further appropriate the income of the property. Even if the deed had expressly pledged the income as security for the debts named, the mortgagor, according to the doctrines of the cases cited, would have been entitled to the income, until, at least, possession was demanded under the deed; or until his possession was disturbed by a sale under the deed of trust or, in advance of a sale, by having a receiver appointed for the benefit of the mortgagee. As was said in *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 395, " courts of equity always have the power where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, etc., to take charge of the property, by means of a receiver, and preserve not only the corpus, but the rents and profits, for the satisfaction of the debt. When justice requires this course to be pursued, and it is resorted to by the mortgagee, it will give him ample protection."

In the present case, it appears that prior to the time fixed for the sale under Bradley's deed of trust, and before the Trust Company filed its cross-bill asking, among other things, for a

receiver of the rents of the mortgaged property, Bradley and Shepherd, with the consent of Shepherd's trustees, had pledged the rents of the property as security for Thompson's debts. As Bradley's deed of trust did not pledge the rents as security for his notes to the Trust Company, the pledge of such rents by himself and Shepherd, his assignee, for Thompson's benefit, did not violate any right secured to it; for, as we have shown, until a sale was had, pursuant to the deed of trust, and possession taken under such sale, it had no right, by the terms of the deed, to take the income of the trust property. So that, if a receiver had been appointed immediately upon the filing, October 25, 1877, of the cross-bill of the Trust Company, and if all the rents represented by the two drafts of $1800 and $3475 had been collected by the receiver, they would still, in virtue of the assignment of June 21, 1877, by Bradley and Shepherd, have belonged to Thompson, *as between him and the Trust Company;* unless, as contended, the transfer by Bradley to Shepherd of the lease to the United States, and their assignment for the benefit of Thompson, are absolutely void, for every purpose, and as to everybody, under the provisions of the statutes relating to the transfer and assignment of contracts with, or claims against, the United States.

It is insisted by the Trust Company that the transfer by Bradley to Shepherd of the lease of June 6, 1873, was void under § 3737 of the Revised Statutes, which provides: "No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties are reserved to the United States."

This provision was brought forward from an act of Congress, approved July 17, 1862, entitled "An act to define the pay and emoluments of certain officers of the army, and for other purposes." 12 Stat. 594, 596. In the original act it immediately followed a section providing "that all contracts made for, or orders given for the purchase of goods or sup-

plies by any department of the government, shall be promptly reported to Congress by the proper head of such department, if Congress shall at the time be in session, and if not in session, said reports shall be made at the commencement of the next ensuing session." We are of opinion that, whatever may be the scope and effect of § 3737, it does not embrace a lease of real estate to be used for public purposes, under which the lessor is not required to perform any service for the government, and has nothing to do, in respect to the lease, except to receive from time to time the rent agreed to be paid. The assignment of such a lease is not within the mischief which Congress intended to prevent. Although a lease, such as Bradley made, is a "contract," in the broadest sense of that word, we are not prepared to hold that it is of the class of contracts, the transfer of which or of any interest therein is prohibited by § 3737.

It is also contended that the assignment made on June 21, 1877, by Bradley and Shepherd is void under § 3477 of the Revised Statutes, which provides that "all transfers and assignments made of any claim upon the United States, or of any part of it or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim or any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

This court has frequently had occasion to construe this section. *United States* v. *Gillis*, 95 U. S. 407; *Erwin* v. *United States*, 97 U. S. 392; *Spofford* v. *Kirk*, 97 U. S. 484; *Goodman* v. *Niblack*, 102 U. S. 556; *Bailey* v. *United States*, 109 U. S. 432; *St. Paul &c. Railroad* v. *United States*, 112 U. S. 733; *Hobbs* v. *McLean*, 117 U. S. 567. Undoubtedly, the lease made by Bradley to the United States created, in his favor what, in some sense, was a "claim upon the United States" for each year's rent as it fell due. And, if the statute

embraces a claim of such a character, there could not have been any valid transfer or assignment of it in advance of its allowance, which could have been made the basis of a suit by the assignee against the United States, or which would compel the government to recognize the transfer or assignment. It is, perhaps, also true that, under some circumstances, the assignor, before the allowance of the claim and the issuing of the warrant, may disregard such an assignment altogether.

But when the government ascertained the amount of rent due under Bradley's lease, and, with his consent, allowed the same to him for the use of Shepherd, for the use of Taylor, Bacon, and Cross, trustees, we perceive nothing in the words or the policy of the statute preventing Thompson from asserting his rights either against the parties or any of them, named in the warrants issued by the government, or against the Trust Company, the mortgagee of the premises. The object of the statute, as was said in *Bailey* v. *United States*, 109 U. S. 432, was to protect the government and not the claimant, and to prevent frauds upon the Treasury; and that "an effectual means to that end was to authorize the officers of the government to disregard any assignment or transfer of the claim, or any power of attorney to collect it, unless made or executed after the allowance of the claim, the ascertainment of the amount due thereon, and the issuing of the warrant for the payment thereof." Here, the officers of the government chose to recognize the assignment, and of their action neither Bradley nor Shepherd, nor Shepherd's trustees, can rightfully complain. The government is acquitted of any liability in respect to the claim for rent, for its officers have acted in conformity with the directions, not only of the original claimant, but of his assignee, Shepherd, and of Shepherd's trustees. The simple question is, whether the money received from the government shall be diverted from the purpose to which Bradley, Shepherd, and Shepherd's trustees agreed in writing that it should be devoted, namely, to the payment of the debts Thompson holds against Shepherd. This question must be answered in the negative; and in so adjudging we do not contravene the letter or the spirit of the statute relating to the assignment of claims upon the United States.

It only remains to say a word in reference to that part of the decree giving to Shepherd's trustees the rent which Bradley, as receiver, collected. We have already shown that Bradley, not having pledged the income of the property to the Trust Company, could pledge it as security for debts held against him by other creditors. After executing the deed of 1873, he conveyed the premises to Shepherd, and also assigned to him the benefit of the lease made to the government. Shepherd included the premises in his deed to Taylor and others of November 15, 1876, and expressly agreed that the rents, issues, and profits therefrom should be applied in payment of the debts named in that deed. The right of those trustees to the rents, issues, and profits which accrued before any sale under Bradley's deed to the Trust Company, and prior to actual possession being taken under such sale, was, consequently, superior to any that company had. That right could not be defeated by anything the company did, whether by means of a receiver or otherwise. Whether the money in the hands of the receiver belonged to Thompson rather than to Shepherd's trustees is a question not before us, since Thompson has not appealed from the decree.

Upon the whole case, we are of opinion that there is no error in the decree to the prejudice of either of the appellants, and it is, in all respects,

*Affirmed.*