### McNAMARA et al. v. HART.

No. 10486.

Circuit Court of Appeals, Eighth Circuit.

May 8, 1936.

Charles A. Lich, of St. Louis, Mo., for appellants.

Jesse E. Bishop, of St. Louis, Mo., for appellee.

Before GARDNER, VAN VALKENBURGH, and FARIS, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

May 27, 1926, one William Healy, described in the record, and by agreement of parties, as a "straw party" for the Commonwealth Farm Loan Company, a corporation not otherwise described, was the record

owner of a certain farm known as the Dye-Stallings farm, situated in Cross county, Ark. On that date he executed to the order of said Commonwealth Farm Loan Company seventy negotiable promissory notes in the amount of $500 each, secured by deed of trust on said real estate. It is found by the court, and conceded, that said deed of trust did not convey any rents or income from said lands and improvements thereon, nor contain any assignment to the trustee thereunder of such rents and income. The Commonwealth Farm Loan Company in the usual course of business indorsed all of said notes without recourse for a valuable consideration to the several noteholders mentioned in the petition in this case. Appellant McNamara held three, and appellant Jones held two, of these notes. Apparently the Commonwealth Farm Loan Company fell into financial difficulties, and July 3, 1931, appellee Hart was appointed its receiver, in what proceeding (presumably under a creditor's bill) does not appear from the record. The receiver took possession of the Dye-Stallings farm, scheduled as an asset of the loan company, subject to the rights of the noteholders under the deed of trust. He collected as crop rentals from the farm the sum of $2,403.49 for the years 1931, 1932, and 1933, and $1,500 for the crop year 1934. As stated by appellants in petition, brief, and argument, immediately upon his appointment as receiver appellee asserted that there was no equity in the farm over and above the mortgage indebtedness, and such was the uncontradicted testimony. Accordingly, the receiver from the outset refused to pay any taxes upon this property, and state and county land taxes for the years 1931, 1932, and 1933 were not paid. June 8, 1931, as found by the court, the farm was, under the laws of Arkansas, sold to the state for taxes, but no certificate of sale was made or recorded; and, under the Arkansas statutes, the period for redemption under this sale expired April 10, 1934. April 9, 1934 the receiver informed appellants that the period of redemption would expire as aforesaid, and on that date appellants paid the delinquent taxes in the amount of $291.80 for purposes of redemption, and received from the county treasurer a redemption certificate and treasurer's receipt to that effect. Thereafter, all the noteholders, whose notes were secured by the deed of trust, transferred all their notes and rights to the Stallings Farm, Inc., a corporation organized under the laws of Arkansas, in exchange for

shares of the capital stock of that corporation. The organization of this corporation was considerably delayed, but, when effected, application was made to the district court for an order upon the receiver to convey by deed the said farm to Stallings Farm, Inc. This order was granted May 21, 1935, and May 24, 1935, the appellee made the deed, in which was recited "the release, satisfaction, and cancellation of all claims whatsoever of the said Stallings Farm, Incorporated, a corporation, under a certain deed of trust and the several promissory notes thereby secured, held by said corporation" on the land in question. In return appellee received from said corporation the deed of trust and all of the notes thereby secured, which notes were by him marked paid, and the deed of trust securing them was released of record.

June 12, 1935, appellants, on behalf of themselves as trustees, and on behalf of all other noteholders similarly situated, except the Title Guaranty Trust Company from which consent could not be obtained, and on behalf also of Stallings Farm, Inc., filed in the District Court for the Eastern District of Missouri, in which the receivership was pending, its "Petition for Order on Receiver Relative to Disbursement of Funds." In this petition appellants, contending that the attitude of the receiver, in asserting from the outset that there was no equity in the farm above the mortgage indebtedness, created a legal duty on the part of the receiver to manage the farm for the benefit of the persons, to wit, the bondholders, having the only beneficial interest therein, prayed that the rental income collected by the receiver, since taking charge of the farm, be impressed with a trust in favor of petitioners, and that the receiver be ordered to account to them therefor. Upon hearing, the court entered its findings and decree in favor of appellee, and this appeal followed.

The principal, if not the only, point relied upon by appellants, is that they acquired an equitable title to the Dye-Stallings Farm when they redeemed it from the state by payment of the delinquent taxes, and that, "when the receiver induced McNamara and Jones to settle the delinquent taxes and to redeem the property from the State of Arkansas for the benefit of themselves and their co-noteholders * * * the receiver has estopped himself from claiming any of the income of the property thereafter derived."

■ The petition did contain a paragraph praying that the rental income collected by the receiver for all the years prior to 1934 be impressed separately by a lien in favor of petitioners, but that claim is not urged either in argument or brief and must be taken as abandoned. The insistence of appellants, therefore, is confined to their claim, upon the ground above stated, for the rental collected by the receiver for the crop year of 1934, in the sum of $1,500. What actually occurred between Receiver Hart and McNamara and Jones upon which the claims of equitable title and estoppel are based is best gathered from the testimony of the receiver:

"I am receiver of the Commonwealth Farm Loan Company. I recall in April, 1934 having a conversation with Messrs. Jones and McNamara regarding the Dye-Stallings farm. Prior thereto I went over the list of noteholders of the Dye-Stallings farm and concluded that McNamara and Jones, being large owners of the notes and being able to advance the money to pay the taxes, that is, effect a compromise of the taxes, be consulted. I suggested to them that they advance the money, either themselves or as a committee, and then proceeded to organize a noteholders' committee to take over the property. I had previously talked to both of them in regard to the matter at various times. I told Jones and McNamara that if they would organize their committee and take possession of the farm soon enough they would get the 1934 rent. I repeatedly told them that after they had gotten their committee or corporation organized, I would apply to the Court for authority to turn the farm over to them. The District Court by which I was appointed never authorized me to pay out any of the 1934 income on the Dye-Stallings farm on account of taxes. After the corporation was organized the serial notes were turned over to me and the mortgage was released of record and I gave a quit-claim deed to Stallings Farm, Inc. The deed itself was in full release and satisfaction of the mortgage and the notes secured thereby.

"Cross-Examination. By Mr. Lich: When I told Messrs. McNamara and Jones that I would turn the rent over to them, I meant that it would be necessary for them to get their organization perfected prior to the collection of the rents. Rents are collected in Arkansas along in September and October and some in November and December. Since I made an inspection of the Dye-Stallings farm, perhaps in the fall of 1931, I concluded that as receiver I had no equity in the farm and have maintained this view since that time. I told the noteholders to come and get their property. I had a number of conferences with Mr. Lich concerning this and other farms. Jones and McNamara experienced some difficulty in getting all of the noteholders to come in on the reorganization. There was one man named Shea who could not be located, but finally Mrs. Moore in our office located him."

■ Mr. McNamara testifies that both Hart and Mrs. Moore, his secretary, co-operated in getting the corporation organized and the notes deposited. To this testimony of the receiver there is no contradiction. Mr. McNamara himself says: "My recollection of just what transpired at that time is not very good." Certainly there is in the record no basis for the contention that the receiver *induced* McNamara and Jones to settle the delinquent taxes and redeem the property. From the outset he had contended that there was no equity in the land above the mortgage, and had openly refused to pay taxes for that reason. Knowing that the farm had been sold to the state for failure of tax payments, and that the time for redemption would expire on April 10, 1934, he advised these noteholders to protect their interests, promising that as soon as they had secured an organization competent to receive the conveyance, he would apply to the court for authority to turn the farm over to it.

This conduct of the receiver was in the nature of friendly co-operation, and a suggestion of such timely action on the part of petitioners as would protect them from loss because of the tax sale. It is conceded by appellants that redemption of land from a tax sale, as in this case, does not have the effect of putting legal title in the party redeeming. That title to the property remains in the original holder—in this instance, the Commonwealth Farm Loan Company. Neal v. Gatz, 187 Ark. 785, 62 S.W.(2d) 945. But they still contend that, under the facts and circumstances in evidence, "an equitable title by estoppel has been set up in favor of the noteholders and their assignee." As already stated, we find that those facts and circumstances do not sustain this contention. But, apart from this finding, there is a conclusive reason why this claim of estoppel cannot be indulged. Receivers of this nature have very

limited powers in the absence of special authority given by the court in which they are officers. Mortgagees of property in the possession of such receivers are bound at their peril to take notice of their powers.

"It cannot be stated too strongly that unauthorized agreements of receivers are their individual acts, and do not bind the court in any way." Northern Finance Corporation v. Byrnes (C.C.A.8) 5 F.(2d) 11, 13.

In the cited case it was urged that the court in equity was bound to carry out the promise of its receiver to repay the amount advanced by a mortgagee for the payment of taxes. It was held that a receiver may not make a substantial disposition of property in his hands without authority from the court for so doing. The claim of estoppel cannot be sustained.

It is conceded, as found by the trial court, that the deed of trust on the Dye-Stallings farm did not convey the rents or profits therefrom. During all the years that this land was in the possession of the receiver, who represented both the owner and creditors. generally, the trial court finds "that no action was ever had or taken in this court by the noteholders whose notes were secured by the deed of trust aforedescribed, or any of them, to secure possession of said farm since July 3, 1931." Appellants in this action seek the income collected for the year 1934, while the land was in possession of the court's receiver.

"The rents and profits of land are incident to the possession; they belong to the person in rightful possession by himself or tenants (Garrett v. Dewart, 43 Pa. 342, 82 Am.Dec. 570); and, in the absence of a stipulation in the mortgage to the contrary, the mortgagor is owner to all the world, and is entitled to the rents and profits until the mortgagee enters into the actual possession, or takes some equivalent action." Grafeman Dairy Company v. Mercantile Club (Mo.Sup.) 241 S.W. 923, 927.

This court, through Judge (now Justice) Van Devanter, has announced the same rule thus forcibly: "A pledge of income does not become effective so long as the mortgagor is permitted to remain in possession of the property and to receive and disburse the earnings. * * * For the same reason the pledge is not operative so long as the mortgagee, by remaining silent, acquiesces in the possession of the property and the collection of the income by a receiver for purposes other than the

satisfaction of the mortgage debt." Atlantic Trust Co. v. Dana (C.C.A.8) 128 F. 209, 219. And such is the ruling generally. Freedman's Saving & Trust Company v. Shepherd, 127 U.S. 494, 8 S.Ct. 1250, 32 L. Ed. 163.

It is unnecessary to consider other points urged because, for the reasons stated, under the pleadings and evidence in this case, appellants were properly denied recovery.

The decree below, accordingly, is affirmed.