Nicholas M. Pette, J.
These are three motions in two supplementary proceedings: one, in the proceeding by American Metal Store Front Co., as judgment creditors, against Sanford Main Shopping Center, Inc., hereinafter referred to as “ Sanford ”, as judgment debtor, in which Sanford and the Mastan Company, Inc., hereinafter referred to as “ Mastan ”, move for an order vacating and setting aside the third-party order dated February 26,1962, and the restraint therein contained, upon the ground that Mastan, as mortgagee, has a prior right to any rents in the possession of Shell Oil Company, the third party herein, or any rents to become due to Sanford from Shell Oil Company; another, in the proceeding by Quinn Contracting Co., Inc., as judgment creditor, against Sanford, in which Mastan and Sanford move for an order vacating and setting aside the third-party order dated February 21, 1962, and the restraint *841 therein contained, upon the same grounds urged in the aforesaid first motion; the third motion is in the proceeding by Quinn Contracting Co., Inc., as judgment creditor, against Sanford, in which it moves for an order permitting and directing Shell Oil Company, the third party, to pay to said judgment creditor on account of the debt owed by said third party to Sanford, the amount of the judgment obtained by Quinn Contracting Co., Inc., against Sanford, in the sum of $1,221.63, with interest thereon from December 7,1961.
The aforesaid matters and motions were referred to the undersigned, then an Official Referee, by orders of this court, dated respectively June 11,1962, and June 8,1962, and upon the stipulation of all the parties entered upon the record herein, the aforesaid proceedings and three motions were consolidated for the purpose of the hearing and heard by the undersigned for determination as a Justice of the Supreme Court on October 31, 1962, at which time the testimony and proofs of the parties were adduced before him.
The following stipulations were entered on the record:
“ (a) that American Metal Store Front Co. commenced work on the premises owned by the judgment-debtor on April 16,1956, and that March 14, 1957 was the date of completion;
“ (b) that the work of Quinn Contracting Co., Inc., was begun in December 1956 and completed on the aforesaid premises in March, 1957;
“ (c) that American Metal Store Front Co., Inc., filed its lien herein on May 17, 1957, and that Quinn Contracting Co., Inc., filed its lien on May 27, 1957;
“ (d) that no actions were instituted on said liens;
“ (e) that checks paid by Shell Oil Company, the tenant in the aforesaid premises and third-party in these proceedings, were made payable to Sanford, as owner and judgment-debtor, and were turned over to Mastan pursuant to a letter dated October 31,1958, as of March 31,1958;
“ (f) that Mastan disbursed the money so received from Sanford in accordance with the terms and conditions of the letter dated October 31, 1958; but it is not stipulated how much was received or how much was disbursed.”
There was marked and received in evidence without objection a list of receipts from the judgment debtor paid to Mastan, as Mastan’s Exhibit A, and a list of the disbursements, as Mastan’s Exhibit B, and it was stipulated that the same accords with their records maintained in the regular course of their business, but not that the same were the full amount received nor that they were the full amount of the disbursements.
*842 There was received and marked in evidence as Mastan’s Exhibit C a photostatic copy of a document dated October 31, 1958, as of March 31, 1958, to the Mastan Company, Inc., from Sanford, without objection.
There were also received and marked in evidence as Mastan’s Exhibit D, a second mortgage by Sanford to Mastan, and Eastan’s Exhibit E, a consolidated mortgage, without objection.
Upon the hearing, the secretary-vice-president of the judgment debtor Sanford, was the sole witness who testified.
It appears that in 1955 Sanford purchased real property located at the southwest corner of Sanford Avenue and Main Street, in Flushing, Long Island, and in 1956 caused a building to be erected thereon; that in order to finance said operation, it obtained a first mortgage loan of $950,000 from the Massachusetts Mutual Life Insurance Company, and a loan of $165,000 from Mastan, which it secured by executing and delivering to Mastan a second mortgage in that amount with interest. Said second mortgage is dated June 25, 1956, and was recorded in liber 7202, page 608, of mortgages in the Register’s office, Queens County. That mortgage contains a clause No. 22 whereby the rents and profits and leases of the mortgaged premises are assigned to the mortgagee; that on March 26, 1957, Sanford obtained a further loan from Mastan in the sum of $121,000 and to secure Mastan it entered into an agreement dated March 26, 1957, consolidating the aforesaid second mortgage with said new obligation of $121,000, so that the second mortgage as thus consolidated is for the sum of $286,000. Said consolidation agreement also contains a clause whereby the rents and profits and leases of the mortgaged premises are assigned to the mortgagee.
It further appears that over a period of seven months there were two vacancies in the mortgaged premises by tenants, one who had paid $18,000 per year rent and the other $6,600 per year rent, so that for said seven-month period there was a loss in rentals of $14,035; that due to these vacancies Sanford was in default in the payments on said second mortgage, and that when Sanford was unable to pay the contractors for labor and materials amounting to over $100,000, there was a creditors ’ meeting held at the office of Sanford’s attorney in February, 1958, at which meeting the financial difficulties of Sanford were put before the meeting and Sanford’s financial statement prepared by Sanford’s accountants, Small Company, was submitted to the meeting so that the creditors were apprised of Sanford’s financial situation and its inability to pay the creditors.
It also appears that after said creditors’ meeting, Sanford was summoned to the office of Mastan in relation to its defaults *843 in payments on the consolidated mortgage, and that Mastan then demanded payment of the entire principal sum unpaid on the mortgage and threatened to foreclose; that Mastan wanted to have a receiver of the rents and profits appointed, but the vice-president of Sanford, pleading that a receivership would only create further difficulties for Sanford with its tenants and prejudice Sanford’s efforts to sell the property, prevailed upon Mastan to accept an assignment of the rents and profits, and to disburse the same in making payments of amortization of principal and interest on the second mortgage, as well as payment of taxes, water rates, sewer rents, assessments, and payments of principal and interest on the first mortgage. Mastan agreed to this, with the further proviso that Sanford collect the rents and turn them over in kind to Mastan. The parties then and there orally agreed to the foregoing terms for the assignment of rents and profits. This transpired on March 31, 1958, and that arrangement was continued. However, Mastan insisted later that the aforesaid oral agreement be reduced to writing and on October 31,1958, that oral agreement was ratified and confirmed by a letter dated October 31,1958, which was received in evidence as Exhibit 0. The pertinent portions of that exhibit read:
‘1 This will confirm our agreement to collect and receive all rents of the above premises in your behalf, and to turn the same over to you in kind promptly upon receipt of the same by us.
“ Such rents turned over to you may be applied in your discretion to the payment of (1) installments of principal and interest payable under your consolidated second mortgage, (2) interest and amortization payable under the first mortgage, taxes, assessments, water rents, sewer rents and any and all other charges affecting or related to said premises, or the payment of which you may deem necessary to the protection of said premises or the security of your consolidated mortgage and/or (3) monthly accruals of first mortgage interest and amortization, taxes, etc., payable under your consolidated mortgage.
“ You are authorized to endorse in our name all checks and other evidences of indebtedness turned over to you hereunder should same not already bear our endorsement.
“ Any and all things done or which may be done in pursuance of the provisions hereof are hereby in all respects ratified and approved.
Yours very truly,
SANFORD MAIN SHOPPING CENTER, INC.
By Thomas Calagna Vice Pres, and Secty.”
The foregoing is dated October 31, 1958, as of March 31, 1958.
*844 It also appears that at the time the assignment of rents was made there was due on the second mortgage for amortization and interest about $6,000 and about $3,400 per month for taxes, as well as payments on the first mortgage. The rentals at this time had returned to normal, about $12,000 per month; that in March, 1958, Mastan knew that Sanford had contractors for labor and materials to pay off. At the time the rents were assigned, the second mortgage had been reduced to $265,000 or $270,000.
The testimony also discloses that when Sanford received the last advance of $85,000 in March, 1957, from Mastan, the same was all used to pay the contractors, but since there was over $100,000 more due to contractors, there was not enough to pay all the contractors; that Sanford had no assets other than the rentals from the mortgaged premises. The vice-president of Sanford also testified that he took no salary for himself between 3956 and 1958 as an official of Sanford, nor any part of the $85,000 advance received from the second mortgagee. He also testified that at the creditors’ meeting in February, 1958, Sanford was not contemplating any assignment of rents to Mastan; that in May of 1957 he received notices of mechanics’ liens from American Metal Store Front Co. and from Quinn Contracting Company.
The attorney for Shell Oil Company stated for the record that in the matter of American Metal Store Front Co., the Shell Oil Company is holding the sum of $9,183 out of the rentals due the Sanford Main Shopping Center, Inc., its landlord; and in the matter of Quinn Contracting Company, Inc., Shell Oil Company is withholding from the rentals due Sanford, its landlord, the sum of $2,443.26, or a total aggregate sum of $11,626.26 for both matters, subject to the order of this court.
The record discloses that a judgment in the amount of $9,183, in favor of the judgment creditor American Metal Store Front Co., and against Sanford, the judgment debtor, was docketed in the office of the Clerk of the Supreme Court, New York County, on January 5,1962.
The record also discloses that a judgment in the amount of $1,221.63 in favor of the judgment creditor Quinn Contracting Co., Inc., and against Sanford was docketed in the office of the Clerk of the County of Queens on January 2,1962.
Query: Has a junior mortgagee, as against a subsequent judgment creditor, an absolute right to possession of the rents of mortgaged premises after a default by the mortgagor in making-payments of installments of principal and interest due, where after a formal demand for payment of the entire principal bal *845 anee and threat of foreclosure, the mortgagor consents by special agreement to the demand of the mortgagee, and pursuant to such special agreement, undertakes to and does collect the rents due from each and every tenant, even though made payable in form to the mortgagor, and turns over such rents, without deduction therefrom of anything, to the mortgagee, so the latter may apply said rents towards payments of amortization of principal and interest on said mortgage, as well as upon amortization of principal and interest on a prior superior mortgage, and payment of taxes, water and sewer charges, assessments, etc., affecting the mortgaged premises, when said mortgages both contain clauses assigning such rents to the mortgagee as well as the leases affecting said mortgaged premises? That is the issue presented to this court in disposing of the three motions herein.
The judgment creditors have offered no testimony or documentary evidence upon the trial of the issue presented. However, they have contended that the accrual of the claim of the judgment creditors prior to the mortgagors' consent to the assignment and collection of rent or prior to the entry into possession of the mortgaged premises by the mortgagee, avoids the assignment of rents as to such judgment creditors.
It has been held that the appointment of a receiver or the actual possession of the premises by the mortgagee are not essential to effectuate a valid assignment of rents, and that such assignment may be accomplished by special agreement. (People ex rel. Balbrook Realty Corp. v. Mills, 295 N. Y. 190, 195.)
In the opinion of this court, the oral agreement and the confirmation and ratification of that agreement in the writing dated October 31, 1958, was a special agreement consenting to the assignment of rents by the mortgagor to the mortgagee.
In Sullivan v. Rosson (223 N Y. 217, 224-225) Judge Chase stated: “Apart from a special agreement or of circumstances affecting the rights and equities of the parties, a junior mortgagee may through a receiver obtain the rents and profits of mortgaged real property. A senior mortgagee desiring to obtain such rents to apply upon his mortgage should actually possess himself of them or of the right to them through some mutual arrangement therefor, or he should make application to the court to have the receivership extended for his benefit.” (Emphasis supplied.)
It would seem clear from the foregoing quotation that there are other ways than the appointment of a receiver by means of which the mortgagee can secure possession of the rents, and that is by “special agreement” or “through some mutual arrangement therefor ”. ,
*846 In the case at bar, the special agreement (Exhibit 0) was a separate instrument, pursuant to the assignment of rents clause in the mortgage, and was executed by the mortgagor after a default, a demand for such assignment of rents, and actual execution of the “ separate instrument In substance and principle, therefore, there is no difference between the situation presented in the case at bar and that referred to by the court in Sullivan v. Rosson (supra) as to an assignment which was valid and could not be challenged. (See, also, Harris v. Taylor, 35 App. Div. 462, appeal dismissed 159 N. Y. 533.)
Presiding Justice Lazaxsuy, speaking for the Appellate Division in Dime Sav. Bank of Brooklyn v. Altman (246 App. Div. 823; 249 App. Div. 174, 176, affd. 275 N. Y. 62) stated: “ Where the assignment of rents clause gives the mortgagee a right of entry upon default, then, upon demand and refusal, the assignment of rents may become absolute ”, citing Freedman’s Saving Co. v. Shepherd (127 U. S. 494) and other cases.
There is no dispute that in March, 1958, Sanford was in default, and at that time the mortgagee, in order to protect its lien, threatened foreclosure and demanded full payment of the entire principal sum secured by the mortgages, and that the agreement for the assignment of rents was a compromise for the protection of the mortgagor’s equity in the property, as well as for the security of the mortgagee.
In the light of the testimony and documentary evidence adduced, this court is of the opinion that the special agreement for the assignment of rents was made in good faith.
The judgment creditors contend that since the claims of said judgment creditors accrued prior to the making of the special agreement, their claims are paramount to such special agreement. The cases cited in support of this contention are not in point and contain nothing material to the issue here. They had also contended that the special agreement violated section 13 of the Lien Law, but fail to show in what manner. Section 13 of the Lien Law reads, inter alia: ‘ ‘ and nothing in this section, nor in that portion of section two of this chapter, defining cost of improvement ’ shall be deemed to impair or subordinate the lien of any mortgage containing the covenant required by this subdivision.” (Subd. [3].) The mortgages in the case at bar contained the covenant required by said section. The case of Aquilino v. United States of America (10 N Y 2d 271) involved the right to moneys due the contractor or to become due to the contractor from the owner, and the right of action therein referred to had nothing whatsoever to do with rent.
*847 It must also be noted that the rents here had in fact been assigned by the provisions in the mortgages, four years prior to the docketing of the judgments of said judgment creditors, and since the special agreement assigning the rents was executed in pursuance of the terms of the mortgages, the mortgagee Mastan had a prior lien.
Upon all the evidence presented here, this court is of the opinion and determines that the Mastan Company, Inc., is entitled to all rent moneys due from the tenants of Sanford Main Shopping Center, Inc., as against the judgment creditors.
Accordingly, the motions to vacate and set aside the third-party order and to vacate the restraint contained therein in the proceedings by American Metal Store Front Co., and Quinn Contracting Company, Inc., are granted. The motion by Quinn Contracting Company, Inc., for an order permitting Shell Oil Company to pay to Quinn Contracting Company, Inc., the sum of $1,221.63, with interest thereon from December 7, 1961, is denied.