598 F.2d 238
 194 U.S.App.D.C. 319
 MAJESTIC BUILDERS CORPORATION, a Maryland Corporation,
v.
Patricia Roberts HARRIS, Secretary, Department of Housing
and Urban Development, et al., Mt. Airy Baptist
Church Housing Corporation, Inc., a
District of Columbia Nonprofit
Corporation, Appellant.
MAJESTIC BUILDERS CORPORATION, a Maryland Corporation,
v.
Patricia Roberts HARRIS, Secretary, Department of Housing
and Urban Development, W. T. Syphax Company, Appellant.
 Nos. 77-1802, 78-1238.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 12, 1979.
Decided March 27, 1979.
As Amended April 9, 1979.
 
 Austin P. Frum, Washington, D. C., for appellants in No. 78-1238 also argued for appellant in No. 77-1802. Larry C. Williams, Sr., Washington, D. C., was on the brief for appellant in No. 77-1802.
 Peter A. Greenburg, Washington, D. C., for appellees.
 John P. Arness and John R. Gerstein, Washington, D. C., were on the brief, for Amicus Curiae urging reversal in No. 78-1238.
 Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., entered appearance, for appellee in No. 77-1802.
 Before BAZELON and TAMM, Circuit Judges, and GERHARD A. GESELL*, United States District Judge for the United States District Court for the District of Columbia.
 PER CURIAM Opinion.
 PER CURIAM:
 
 
 1
 These two cases arise out of the construction of a low-income housing project in the District of Columbia. One action, No. 77-1802, was brought by the contractor to recover for work performed pursuant to a construction agreement change order. The other, No. 78-1238, relates to the contractor's subsequent and successful attempts, as victor in the first case, to collect upon its judgment. We affirm the judgments below in favor of the contractor in both cases.
 
 A. No. 77-1802
 
 2
 Mount Airy Baptist Church Housing Corporation ("Mt. Airy"), sponsored a low-income housing project known as Tyler House, under Section 236 of the National Housing Act, 12 U.S.C. § 1715z-1. On March 13, 1969, Majestic Building Corporation ("Majestic"), undertook by contract with Mt. Airy to act as general contractor and complete the project. A mortgage covering the maximum possible contract price was obtained by Mt. Airy; this in turn was guaranteed, and the contract price approved, by the Federal Housing Administration ("FHA").
 
 
 3
 Shortly after construction commenced it became necessary to redesign a portion of the project's foundation. This alteration, which entailed additional costs, was memorialized in Change Order No. 11 executed by Majestic and Mt. Airy on March 1, 1971. This change order was submitted to and approved by the mortgagee and FHA, as required under the terms of Article I-E of the original contract. Subsequently, though, FHA refused to increase the mortgage guarantee by the entire amount of the cost increase covered by the change order. The difference between the approved cost rise and the permitted increase in the loan guarantee had as a result to be paid directly by Mt. Airy under the change order and when Mt. Airy refused to pay, Majestic sued in the District Court.
 
 
 4
 Mt. Airy contends that the change order was not supported by adequate consideration, and that Mt. Airy's signature on the change order was induced by overreaching or fraud on the part of Lawson, an attorney who then represented Mt. Airy, but who for certain purposes also represented Majestic. The District Court correctly rejected these defenses.
 
 
 5
 Assuming that the issues before this Court were properly raised below which is far from clear since fraud and lack of consideration were not affirmatively pled the record supports the District Court's conclusion that the change order was based on adequate consideration. The need for a foundation using caissons in the southern sector of the project was not contemplated by the parties at the time of contracting, and was not contained in the original contracts' detailed specifications. Consequently, when Majestic was obliged to use caissons in the southern section because of new information obtained from borings, it was called on to perform something which it was not antecedently obligated to do from a legal standpoint. Such a contract is supported by adequate consideration. See Corbin, Contracts § 171; Williston, Contracts § 130. In addition, even if the construction contract had simply constituted a generalized undertaking, the trial judge properly found that adequate consideration existed by reason of Majestic agreeing to use a foundation the need for which had not been reasonably foreseeable at the time of contracting. See Corbin, Contracts § 184; Linz v. Schuck, 106 Md. 220, 67 Atl. 286 (1907); Affidavits of James J. Schnabel, J.A. at 71-77 and of Howard L. Keller, J.A. at 78-83.
 
 
 6
 Mt. Airy's contention that the District Court incorrectly resolved the fraud claim must similarly fall. On this matter, the trial judge heard the sworn testimony of Rev. Long, the President of Mt. Airy, and Lawson. He was thereby able to pass on credibility and fully explore the issues of fact which related to that defense by going well beyond the formal summary judgment papers. Mt. Airy's contention that the matter was not ripe for summary judgment is misplaced.
 
 
 7
 The District Court's rejection of Mt. Airy's fraud claim finds full support in the record. Neither Rev. Long's affidavit nor his trial testimony indicates that Lawson ever made any misrepresentation of fact or law to Mt. Airy. The District Court also accepted Lawson's testimony to the effect that she had fully educated Rev. Long on the legal ramifications of Change Order No. 11. Finally, the record demonstrates beyond a shadow of a doubt that Rev. Long was aware of the fact that Lawson represented both Mt. Airy and Majestic when both applied for a loan increase from FHA to cover the additional costs of Change Order No. 11.
 
 B. No. 78-1238
 
 8
 The second case concerns Majestic's attempt to collect on its judgment against Mt. Airy. Mt. Airy, as owner of Tyler House, contracted with W. T. Syphax Management Co. ("Syphax") to manage the project and receive all rents due from the House's tenants. In order to collect on its judgment, Majestic served upon Syphax and Industrial Bank of Washington (holder of Tyler House's funds) a series of writs of attachment against existent Tyler House rents. Judicial proceedings in the District Court ensued with Majestic moving for judgment against the two garnishees. Neither the United States Department of Housing and Urban Development ("HUD") which had earlier entered into a Regulatory Agreement concerning the Tyler House Project with Mt. Airy nor the Federal National Mortgage Association ("FNMA") the assignee of the Tyler House mortgage was made a party to this proceeding.
 
 
 9
 On January 27, 1978, the District Court ruled in favor of Majestic and ordered Syphax to pay $16,797.65 and Industrial Bank to pay $12,140. After noting that some doubt existed as to Syphax's standing to raise HUD's or FNMA's interest in these funds,[1] the District Court held that "(s)ettled precedent in this jurisdiction stands firm for the principle that the rights of judgment creditors to rents collected are not inferior to those of a mortgagee who has yet to declare a default and obtain possession of the leased premises." The Court thereby held for Majestic, finding further support for this outcome in the fact that the federal government had made "a conscious waiver . . . of its rights to the funds . . ." by electing not to enter the proceeding to defend its putative interests in the Tyler House rents.
 
 
 10
 The record does not adequately reveal whether or not the appropriate HUD officials were in fact ever apprised of the attachment proceeding, although the District Court was so advised. It is clear that at least FNMA was never put on notice that the proceeding was pending. FNMA has, however, filed an amicus brief in this Court, and its arguments have been carefully considered. The issues being solely ones of law, no purpose would be served by remanding the case to the District Court to permit intervention and participation by HUD or FNMA.
 
 
 11
 Syphax and FNMA contend that Mt. Airy had no interest in the Tyler House rents against which Majestic, as a mere creditor of Mt. Airy, could execute. In this regard, they rely on the Regulatory Agreement between Mt. Airy and HUD and the terms of the pertinent Deed of Trust, now held by FNMA. Paragraph 13 of the Regulatory Agreement provided in pertinent part that:
 
 
 12
 (T)he Owners . . . assign, pledge and mortgage to the Commissioner their rights to the rents . . ., subject, however, to any assignment of rents in the insured mortgage (such as that made in this case to FNMA) . . .. Until a default is declared under this Agreement, however, permission is granted to Owners to collect and retain under the provisions of this Agreement such rent . . ., but upon default this permission is terminated as to all rents due or collected thereafter.
 
 The Deed of Trust stated that:
 
 13
 (A)ll rents . . . are hereby assigned toMA . . .. Permission is hereby given to (Mt. Airy) . . . so long as no default exists hereunder, to collect such rents . . . for use in accordance with the provisions of the Regulatory Agreement.
 
 
 14
 Syphax and FNMA interpret these clauses as having, at the outset of the mortgage arrangement, created an absolute assignment In praesenti of the Tyler House rents to FNMA and to HUD. They correspondingly maintain that the second part of the two clauses simply afforded Mt. Airy the right to collect the Tyler House rents for the benefit of FNMA and HUD. Cases are cited from other jurisdictions that suggest the existence of a distinction between present absolute assignments of rental income and mere pledges of rental income for security purposes. See In re Ventura-Louise Properties, 490 F.2d 1141 (9th Cir. 1974); Empire State Collateral Co. v. Bay Realty Corp., 232 F.Supp. 330, 335 (E.D.N.Y.1964); Kinnison v. Guaranty Liquidating Corp., 18 Cal.2d 256, 115 P.2d 450 (1941). The implication of these cases is that a creditor may not garnish rents which are subject to an effective In praesenti assignment to a mortgagee.
 
 
 15
 Majestic counters with two cases applying District of Columbia law that hold that an assignment of rents for security purposes becomes effective against a general creditor only when the assignee or a receiver takes actual possession of the mortgaged property, at least where such rents are not paid from the outset by the mortgagor to the mortgagee. See Freedman's Saving & Trust Co. v. Shepherd, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888); Hardee v. American Security & Trust Co., 64 U.S.App.D.C. 259, 262, 77 F.2d 382, 385, Cert. denied, 296 U.S. 595, 56 S.Ct. 110, 80 L.Ed. 421 (1935).
 
 
 16
 This Court need not determine whether the rationale of these cases is inconsistent with the authorities cited by Syphax. For, even under the rule relied upon by Syphax and FNMA, the instant assignment cannot be said to have been one In praesenti prior to default.[2] Paragraph 13 of the Regulatory Agreement expressly stated that Syphax's right to "collect and retain" the rents would, upon a default, be cut off only as to "rents due or collected Thereafter." (Emphasis supplied). Rents collected prior to default could be used in any manner by Syphax, so long as such use was in conformance with the Regulatory Agreement. Thus, the assignment did not operate so that the rents "were relinquished completely" by Syphax. See Kinnison v. Guaranty Liquidating Corp., supra, 115 P.2d at 454. Moreover, Paragraph 14(g)(iii) of the Regulatory Agreement permitted Mt. Airy to apply the rents it collected to "(a)ll obligations of the project . . .." Mt. Airy's judgment debt to Majestic most certainly fell within the term "obligations." Paragraph 10(g) of the Agreement is not inconsistent with this interpretation of Paragraph 13. Paragraph 10(g) merely directed that all rents derived from the project be deposited in a bank "in the name of the project" and that such rents be withdrawn "only in accordance with the provisions of this Agreement for expenses of the project and remittances to the Commissioner . . .."
 
 
 17
 The assignment clause contained in the Deed of Trust afforded FNMA no greater right to the Tyler House rents than that enjoyed by HUD under the terms of Paragraph 13 of the Regulatory Agreement. The Deed of Trust provided that Mt. Airy could use the rents it collected until default "in accordance with the provisions of the Regulatory Agreement." Thus, the attachments were valid.
 
 
 18
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 Majestic has again raised the issue of standing before this Court. Without a doubt, Syphax was injured as a result of Majestic's garnishment against it. Had these funds not been attached, they could have been used by Syphax to pay Tyler House's current operating expenses, the project's other debts, or the mortgage payments as they become periodically due. Without the funds, the project had to have run a greater risk of falling into default, an eventuality which would injure Syphax. Syphax, therefore, had standing to assert its or Mt. Airy's lack of ownership of the funds here in question. See Duke Power Co. v. Carolina Environmental Study Group, Inc., 435 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)
 
 
 [2]
 The instant assignments, like the assignment involved in In re Ventura-Louise Properties, supra, could arguably be viewed as conditionally absolute, I. e., they would become absolute upon the occurrence of a default, but not before. See Kinnison v. Guaranty Liquidating Corp., supra, 115 P.2d at 453. The Court is not faced with such a situation, however, and will, therefore, not decide whether or not these clauses should be given such a construction