O'HARA v. MOBILE & O. R. CO.

(Circuit Court, E. D. Missouri, E. D.   December 30, 1895.)

No. 3,851.

1. MORTGAGE—RIGHT TO RENTS AND PROFITS—LEASE.

The R. Equipment Company leased to one O. a number of freight cars, the lease providing that, in case of default by O. in the payment of the monthly rent, all mileage or other earnings of the cars should be payable to the lessor, and be applied on the unpaid rent due to it, and thereafter falling due, and that the lessee should give notice to the proper parties to pay such earnings to the lessor, though such notice should not be necessary to enable the lessor to collect the same. It was also provided that, upon default, the lessor might take possession of the cars. O. subleased the cars to defendant, and, at the same time, made known to it the terms of the lease, and, upon the subsequent occurrence of a default in his payments to the equipment company, authorized defendant to pay its rental to the equipment company. Held, that the lease from the equipment company to O. amounted to a mortgage back of the cars to it, with the rentals accruing to O. under his sublease, as security for the rentals to the equipment company; that the provisions of the lease to O. took it out of the general rule that a mortgagee not in possession is not entitled to rents and profits; and that, after O.'s default, there was a privity of contract between defendant and the equipment company, binding the defendant to pay its rental to the equipment company, and constituting a defense to an action by O. against defendant for such rentals.

2. RES JUDICATA—TITLE.

At the expiration of the lease of the cars to O., a dispute arose between him and the equipment company as to the ownership and right of possession thereof, in consequence of which defendant refused to deliver possession thereof to either until their rights were settled. Thereupon a suit was brought by the equipment company, to which O. and defendant were parties, and in which a decree was rendered, adjudging that the title to the cars was in the equipment company, that O. should be barred and foreclosed of any interest therein, and awarding compensation to defendant for storage of the cars, after the termination of the lease to it from O. Held, that this decree was res judicata as to O.'s right to recover damages from defendant for the detention of the cars, after the termination of the lease to it.

Campbell & Ryan, for plaintiff.
R. P. Williams, for defendant.

ADAMS, District Judge.   By an agreement of lease dated January 12, 1893 (hereafter called the "O'Hara Lease") the plaintiff in the above-entitled action leased to the defendant 200 box cars for a term of 12 months.   The defendant agreed to pay therefor to the plaintiff a monthly rental of $7.50 per car.   The plaintiff sues on this agreement, and alleges in his petition that, pursuant to its terms, he delivered the cars to the defendant, and that the defendant failed and refused, at the end of the year, to return said cars to the plaintiff, but retained the same in its possession until August 1, 1894, whereby the plaintiff was damaged in the reasonable value of the use thereof, in the sum of $10,290.   The plaintiff also alleges that the defendant did not pay the rent reserved for said cars for the last two months of the above-mentioned term, amounting to $2,540.   The plaintiff therefore says there is justly due him for the aforesaid use and rental the sum of $12,830, for which he asks judgment.

There are two defenses pleaded to this action. The first is that the plaintiff acquired these cars, with others, prior to leasing them to defendant, from the Railroad Equipment Company, and, in payment therefor, executed and delivered to the last-named company a large number of notes, or "lease warrants," as they are called in evidence, each lease warrant representing an agreed monthly payment; that a lease was executed by said Railroad Equipment Company to the plaintiff (hereafter called "Equipment Lease") expressing the terms and provisions of the transfer; that among them there appears the following:

"The said lessee [O'Hara] further agrees, in case of any default on his part under this agreement, that all the mileage or other earnings of said railroad rolling stock and equipment shall then and thereafter be and become payable to said lessor [Railroad Equipment Company] and assigns, and be by said lessor applied to the payment of the installments of rent then due and payable, and thereafter falling due and payable; and the said lessee hereby agrees forthwith, upon such default, to notify the proper parties to pay over such earnings to the said lessor and assigns. Such notice, however, shall not be necessary in order to enable the said lessor and assigns to collect and receive such earnings in case of such default. In case of default in payment of any installment or installments of rent on the day on which the same falls due hereunder, the said lessor and assigns shall have the right to declare due and payable all the installments herein provided for, including those not at that time matured, and shall also have the right, at its option, by its agents, employés, or attorneys, to take immediate and exclusive possession of, and remove, any and all of said railroad rolling stock and equipment which may have been delivered to the said lessee under this agreement, and for that purpose may pursue the same or any part thereof wherever it may be found, and shall have the right to sell the same," etc.

Defendant, after setting forth the foregoing facts in its answer, alleges that the said O'Hara, plaintiff herein, defaulted in the payment of the lease warrants above mentioned on the 1st day of June, 1893, and continued so in default until the expiration of the term provided for in the O'Hara lease; that this defendant had knowledge of all the terms and provisions of the Equipment lease at the time it leased said cars from O'Hara. In fact, the evidence shows that a copy of the Equipment lease was delivered by O'Hara to the defendant with the O'Hara lease. Defendant, in its answer, further says that, pursuant to the provisions of said Equipment lease, O'Hara, at the time of such default, in June, 1893, directed the defendant to pay the monthly rentals for said cars, as they might fall due, to the Railroad Equipment Company; that, pursuant to such directions, the defendant paid each month's rent due under the O'Hara lease to the Railroad Equipment Company, until the 1st day of November, 1893; that, on and after the last-mentioned date, a controversy arose between O'Hara and the Railroad Equipment Company with respect to their rights to the rental for the last two months of the term, namely, November and December, and in respect to the ownership of the cars and to whom the same should be delivered at the expiration of the term; that each and both of said parties demanded the same; and that, for the reasons aforesaid, the defendant paid no more rental, and declined to deliver the cars at the end of the term

to the plaintiff.    And, for a second defense, the defendant says that it was in possession of the cars at the expiration of its lease thereof, to wit, the 12th day of January, 1894; that it owed the rent for the two months preceding; that both O'Hara and the Railroad Equipment Company demanded the balance of the rental, and at the end of the term demanded possession of the cars, each claiming to be entitled to and to own the same; that defendant declined to recognize either until they should adjust and settle their rights with respect thereto; that afterwards, on the 1st day of August, 1894, the Railroad Equipment Company and the Atlantic Trust Company, who owned many, if not all, the above-mentioned lease warrants, instituted a suit in the circuit court of the United States for the Southern District of Illinois, making the plaintiff, Henry O'Hara, and the defendant, Mobile & Ohio Railroad Company, parties defendant; that in said suit (hereafter called the "Illinois Case") a receiver was appointed, to take possession of the said cars, and to collect the rents and profits which had accrued from use thereof; that such proceedings were afterwards had in said last-mentioned suit that a final decree was entered therein on the 26th day of September, 1895, adjudging and decreeing the full title to all said railroad cars and unpaid earnings arising therefrom to be fully vested in the said complainants,—that is to say, the Railroad Equipment Company and the Atlantic Trust Company; and that the said defendant Henry O'Hara be forever foreclosed and barred of and from any right, title, or interest whatever in and to said cars and earnings aforesaid, and every part thereof.    The defendant pleads the decree and judgment in the last-mentioned cause as res adjudicata of the matter in controversy in this suit.    The parties went to trial on the issues presented by this answer.

The first defense is, in substance, that by reason of O'Hara's default in paying the monthly rentals provided for in the Equipment lease, and by reason of the covenants contained in that lease, all of which were made known to the defendant in this case, Mobile & Ohio Railroad Company, the plaintiff's right to the rentals due from the defendant under the O'Hara lease, and also the plaintiff's right to the possession of the cars at the end of the term created by the O'Hara lease, ceased, and that, therefore, the plaintiff cannot maintain this action.    For the purposes of this case, in legal intendment, the lease from the Railroad Equipment Company to O'Hara is the equivalent of a mortgage back from O'Hara, as mortgagor, to the Railroad Equipment Company, as mortgagee, transferring to the last-named company the rentals which O'Hara might be entitled to under a sublease, as security for the prompt and punctual payment of the lease warrants provided for in the Equipment lease.    The rule of law is well recognized that so long as the mortgagor is allowed to remain in possession of mortgaged property, in the absence of stipulations to the contrary, he is entitled to receive and apply to his own use the income and profits of the mortgaged property, and the mortgagee cannot claim such income or profits (or rents, as in the case at bar) until after he takes possession of the mortgaged property for condition broken.    In the case at bar, however, I think there are such

stipulations in the mortgage, and such privity established between the mortgagee and the lessee of the mortgagor, as to take this case out of the general rule. It will be remembered that by the terms of the mortgage (lease) between O'Hara and the Railroad Equipment Company, in case of any default on the part of the mortgagor in the payment of the lease warrants, all the mileage or other earnings of the cars, in whosesoever hands they might be, became then and thereafter payable to the mortgagee, and the mortgagor agreed thereupon to forthwith notify any lessee of his to pay over the same to the mortgagee. In order to make the matter still more obligatory, it is provided that such notice will not be necessary in order to enable the mortgagee to collect and receive the earnings or rentals of the cars in case of such default. These provisions were made known to the defendant in this case at the time of the execution of the O'Hara lease, by O'Hara's delivering to the defendant a copy of the above-mentioned mortgage, with the O'Hara lease. It must therefore be found that it was the intention of all the parties to permit and require the defendant, as lessee of the mortgagor, in case of its lessor's default under his mortgage to the Railroad Equipment Company, to pay the rentals, mileage, or other earnings of the cars directly to said mortgagee. Not only so, but the issue of the two circulars by the Railroad Equipment Company by and through its agents, Dickson and Kimball, in which the plaintiff, Henry O'Hara, joins, was a direct authorization given by O'Hara to the Railroad Equipment Company to collect all these rentals, and the defendant recognized this authority, and acted on it. While I do not believe this express direction was necessary, it emphasizes the correctness of the conclusion already reached in this matter, that an actual privity of contract existed after June, 1893, between the Railroad Equipment Company and the defendant in this case, whereby this defendant became obligated to thereafter account to the Railroad Equipment Company for any and all rentals due by it on account of its lease of the cars in controversy. By the contract with the Railroad Equipment Company, and by the circulars, the plaintiff directed the defendant to treat with the Railroad Equipment Company after default by O'Hara, as the owners of the cars in question. The defendant, by acquiescing and conforming to the directions of the plaintiff, evidenced by the said contract and circulars, must now be held to have assumed obligations to the Railroad Equipment Company entirely inconsistent with a continuation of liability to the plaintiff. The case of Trust Co. v. Shepherd, 127 U. S. 494, 502, 8 Sup. Ct. 1250, is authority for this conclusion. It is there said, in connection with the announcement of the general rule that a mortgagee is not entitled to collect rents and profits of mortgaged premises until he takes possession thereof, as follows: "It is, of course, competent for the parties to provide in the mortgage for the payment of rents and profits to the mortgagee while the mortgagor remains in possession." In the case at bar, the parties saw fit to provide in the mortgage for the payment of rents and profits to the mortgagee before he took possession. To the same effect is Teal v. Walker, 111 U. S. 242, 248, 4 Sup. Ct. 420, where the general rule above stated is limited to

cases where no privity of estate or contract is created between the mortgagee and the lessee of the mortgagor.

The second defense pleaded by the defendant submits the question as to whether the proceedings and final decree rendered in the Illinois case are res adjudicata of the controversy involved in the case at bar. In my opinion this defense is also well taken. The plaintiff's counsel, as I understood them on argument, concede that the decree rendered in the Illinois case disposed of all questions of rent; but they insist that it does not estop them from asserting a claim for damages for a failure on the part of the defendant to deliver possession of the cars in question at the termination of the O'Hara lease, on the 12th day of January, 1894. They insist that this cause of action is for damages for the detention of property, and is not for rent or the rental value or earnings of the cars. Without undertaking to carefully analyze the various allegations of the bill of complaint of the Railroad Equipment Company and the Atlantic Trust Company, or the answers of the Mobile & Ohio Railroad Company or O'Hara, or the powers conferred upon the receiver appointed in the Illinois case in his order of appointment, or the provisions of the interlocutory decree entered in the case on stipulation of some of the parties, it is, in my opinion, sufficient to say that the gist of the controversy in that case was with respect to the ownership of the cars in controversy. The pleadings all refer to the conflicting claims asserted with respect to the cars by the Railroad Equipment Company and O'Hara, and their respective demands upon the defendant in this case, the Mobile & Ohio Railroad Company, for the possession of the cars at the end of the lease, January 12, 1894. Such a dispute had arisen with respect thereto that the Mobile & Ohio Railroad Company was unable to determine who was the true owner, and to whom it should deliver them. It appears from the pleadings that the Mobile & Ohio Railroad Company had stored the cars upon its side tracks in East St. Louis, ready and willing to deliver possession thereof to whomsoever was lawfully entitled thereto; and the last-named company claimed compensation for storage thereof. The court was therefore required to find, among other things, whether the railroad equipment Company or O'Hara was entitled to the possession of the cars from the Mobile & Ohio Railroad, and whether the Mobile & Ohio Railroad Company was entitled to compensation for storing the cars from and after the time the dispute as to ownership arose. The court, in the final decree, found and adjudged that the Railroad Equipment Company was entitled to the ownership of the cars, and the Mobile & Ohio Railroad Company was awarded the sum of $1,000 on account of its claim for storage of cars from and after the time the O'Hara lease expired, and up to the time of the final delivery thereof to the Railroad Equipment Company.

It is insisted by counsel for the plaintiffs that said decree is not res adjudicata of plaintiff's claim for damages for not delivering the cars at the end of the lease, and, justifying such claim, they call attention to the language of the final decree in the circuit court of the United States for the Southern district of Illinois, which reads as follows:

"It is further ordered, adjudged, and decreed that the full title to all the railroad cars mentioned and described in the bill of complaint in said cause, and any unpaid earnings arising therefrom, be now fully vested in the said complainants or their assigns, and that the said defendant the said Henry O'Hara be forever foreclosed and barred of and from any right, title, or interest whatever in and to said cars and earnings aforesaid, and every part thereof."

It is insisted that the word "earnings" does not cover or include the value of the use of said cars which plaintiff claims in his measure of damages, from the 12th of January, 1894, to the 1st of August, 1894. It is not necessary, in the view the court takes of these proceedings, to pass upon whether the word "earnings" is comprehensive enough for that purpose or not.

The rule, as laid down in the leading case of Cromwell v. Sac Co., 94 U. S. 351, does not require that the final decree pass distinctively and pointedly upon the very matter or the very issue raised in a subsequent case, but it is said in that case, quoting from Lord Ellenborough:

"It is not the recovery, but the matter alleged by the party and upon which the recovery proceeds, which creates the estoppel."

The last-mentioned case holds that the question to be considered is whether a particular point was necessarily involved in the finding in the original action. If it was so involved, it is res adjudicata; and, if it was not so necessarily involved, it is not res adjudicata.

So, also, in the case of Southern Minn. Ry. Extension Co. v. St. Paul & S. C. Ry. Co., 12 U. S. App. 320, 5 C. C. A. 249, and 55 Fed. 690. it is held, in determining whether a former judgment is an estoppel, as follows:

"It is not the recovery, but the matter alleged by the party, and upon which recovery operates, which creates the estoppel; and this estoppel precludes parties and privies from contending to the contrary of that point or matter of fact which, having been once distinctly put in issue by them, has been on such issue joined solemnly found against them."

In the case of Laird v. City of De Soto, 32 Fed. 652, in an opinion by Judge Brewer, it is said:

"But, in any event, when the record of a case shows that a question must necessarily have been decided before the judgment which was rendered could have been rendered, it is conclusive in all subsequent litigations upon the fact that that question has been litigated and decided, and the party may invoke that decision upon the principle of res adjudicata."

Applying the doctrine of the foregoing cases, it seems to me clear that the decree in the Illinois case already quoted necessarily relates, under the pleadings, to the time when the controversy arose, namely, the 12th day of January, 1894. Under the pleadings and the stipulation and evidence in that case, the court could not have passed such a decree without having necessarily decided that the Railroad Equipment Company was the owner of the cars at the date last mentioned and subsequent thereto.

Again, in and by interlocutory decree entered in said Illinois case on the 29th day of October, 1894 (which became final, no party appealing therefrom), the court passed upon the claim of the Mobile & Ohio Railroad Company for storage of the cars in controversy

from and after the expiration of the lease from O'Hara, and found and allowed to the Mobile & Ohio Railroad Company $1,000 therefor. In order to have reached that judgment, the question involved in this present case must have necessarily been decided by the court. If the Mobile & Ohio Railroad Company was entitled, as against O'Hara and the Railroad Equipment Company, to compensation for the storage of its cars, it necessarily follows that it was in no wrong with respect to either of those parties in holding the possession of said cars.

In my opinion, therefore, the plaintiff is estopped from claiming anything by virtue of the facts stated in his petition in this case by the judgment rendered in the circuit court of the United States, to which he was a voluntary party. There must, therefore, for both of the reasons already assigned, be a judgment in favor of the defendant.