**In re MORRIS WHITE HOLDING CO., Inc., and three other cases.**

**No. 51126.**

District Court, S. D. New York.

Sept. 22, 1931.

Jones, Clark & Higson, of New York City (A. Delafield Smith, of New York City, of counsel), for petitioners.

Cadwalader, Wickersham & Taft, of New York City, for Bowery Sav. Bank, holding a first mortgage on the Hotel White, as amici curiæ.

Rosenberg, Goldmark & Colin, of New York City (James N. Rosenberg and George K. Hourwich, both of New York City, of counsel), for Irving Trust Co., trustee of bankrupt estates of Morris White Holding Co.

WOOLSEY, District Judge.

I grant the petition herein sought to the extent that leave is granted to the petitioner to bring a foreclosure suit on the equity side of this court to foreclose the mortgage which it claims to hold on certain real estate and personal property of the Morris White Holding Company, Inc., situate within this district, and to join therein the bankrupt, the trustee in bankruptcy thereof, and all other necessary or proper parties, and to proceed with such suit; but this relief is granted only subject to the conditions hereinafter set forth which must be embodied in the order entered on this application.

I. The petitioner is a corporation of Delaware and claims to be the second mortgagee under a blanket mortgage of six parcels of real estate and some personalty owned by the bankrupt Morris White Holding Company, Inc.

The bankrupt mortgagor is a New York corporation, and the amount involved in the suit for foreclosure, leave for which is sought in this application, is far in excess of the

amount necessary to give this court jurisdiction on the ground of diversity of citizenship.

All nice questions of jurisdiction of the subject-matter may, therefore, be regarded as out of the situation; and the question of jurisdictional appropriateness of a foreclosure on the equity side of this court as ancillary to a bankruptcy proceeding will not have to be dealt with, as would be necessary if the petitioner were a corporation of the same state as the bankrupt.

█ Although the jurisdiction of the proposed foreclosure in equity is not dependent on such ancillary relationship, I shall, nevertheless, consider that any foreclosure suit which may be brought by the petitioner is in fact ancillary to and irrevocably bound up with the bankruptcy proceedings, and that its progress will throughout be subject to the orders of this court of bankruptcy as the dominant jurisdiction. Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 737, 51 S. Ct. 270, 75 L. Ed. 645; In re Schulte United, Inc., (C. C. A.) 49 F.(2d) 264; In re Giuseppa Parrino (D. C.) 50 F.(2d) 611, decided May 23, 1931, by Judge Campbell. And see also in this connection Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060.

II. Without going into the details of the figures, the situation may be conveniently summarized by saying that on April 10, 1930, the petitioner took a blanket mortgage on certain premises of the Morris White Holding Company which were already mortgaged; that events of default appear to have occurred under the petitioner's mortgage as long ago as November 1, 1930, when the real estate taxes, then due on the mortgaged premises, were not met by the mortgagor and still remain unpaid; that on December 10, 1930, further events of default occurred; that some principal and interest is overdue on the first mortgages, and that there was on August 5, 1931 a total aggregate unpaid mortgage indebtedness for taxes and interest on all the mortgages of circa $330,000, and for amortization payments on all the mortgages of circa $335,000; that there was due on August 5, 1931, under the petitioner's second mortgage $1,960,268.20 of principal and circa $80,000 of interest.

The earnings of the several properties, which have, I think, been very well managed by the receiver since its appointment on April 21, 1931, appear not to be sufficient to carry the mortgage burden.

For example, it is estimated, I think correctly, that it would take increased earnings of $20,000 per month for twelve months to clear the defaults, including unpaid taxes, on the first mortgages.

Such increased earnings are not reasonably predictable in the present real estate market, and, consequently, the first mortgages are in a position which would justify the first mortgagees, if they thought it necessary and advisable marketwise, to petition for a right to foreclose. And if they cannot be reinstated they should not, except for compelling reasons, be forced to wait until junior lienors have secured their remedy.

The petitioner, as second mortgagee, is therefore between the nether millstone of the first mortgages, and the upper millstone of the bankruptcy court, representing general creditors as a group through the trustee in bankruptcy, and is in danger of having the property covered by its mortgage suffer attrition from both directions.

██ III. When a mortgage creditor seeks to foreclose on property of a bankrupt it means that some one, who had foresight enough to get security, is anxious to realize on it, and while it undoubtedly is necessary for a bankruptcy court to have the power to prevent an inconsiderate lienor from doing damage to the estate by forcing a foreclosure unnecessarily, it should, in the exercise of its discretion, tend to be very hospitable to the requests of lienors for leave to foreclose their liens and should not deny such applications except for really weighty reasons.

█ The crucial question involved in the exercise of the court's discretion in such matters is whether by the postponement of a foreclosure a higher price and, hence, a greater equity for general creditors is reasonably expectable.

█ Here it is common ground that the present market for real estate in New York City is a purchaser's market and that there is not any prospect of improvement in this regard within any reasonable time. Indeed, the experts who valued these properties on behalf of the trustee suggest a substantial equity above the petitioner's second mortgage only if the parcels of real estate involved are marketed, presumably with shrewdness, over a five-year period, and they fix their valuations accordingly.

So sedate a procedure points to the wisdom of a reorganization or composition if anything is to be left for the general cred-

itors, but it does not, of course, recommend itself to a mortgagee, at present having a right to foreclose its lien, or to a Court as a ground for refusing to allow a foreclosure.

The matter involves, in its ultimate analysis, the exercise of business judgment; and having before it a mortgagee who wishes to go on with a foreclosure, a court of bankruptcy, with its implicit equitable attributes, would not be assuming a creditable role if it should force on such a mortgagee a gamble in an uncertain and distant future market by putting on it an indefinite moratorium in derogation of its contract rights.

If a sale in bankruptcy by the trustee were impending, a short delay might be appropriate. But for reasons hereinafter given, there is no sale in bankruptcy in contemplation.

I feel, therefore, that every element involved in this case points in the direction of granting this petition.

If there were any real dispute here on the facts, I should have felt bound to send the case to a special master for a report on them; but as the dispute here—put at its highest—is between prophecies of an improved market at some time in the quite distant future and between the estimates as to such a market by one or another set of experts, it has seemed to me quite unnecessary to go further into the facts by oral evidence.

There are, however, some additional matters to be mentioned before I deal with the conditions on which the relief sought by the petitioner is granted.

The trustee has thrice—on June 11, July 8, and July 22, 1931—in meetings over which I presided, unsuccessfully endeavored to sell at public sale its equities in the properties covered by the petitioner's mortgage. On those occasions, in my presence, and between them, as I have been advised, the petitioner and a committee of the general creditors have made many efforts to accomplish some form of reconstruction of the situation which would prevent the necessity of a foreclosure under present conditions. But all efforts of the parties interested have failed of fruition, and as the petitioner wishes to risk the present market I do not think I should prevent its doing so; but at present I grant only leave to commence foreclosure proceedings on the equity side of this court, leave to join the trustee as party thereto as must necessarily be done, and leave to prosecute the proceedings up to, but not including a decree.

IV. I hold that the filing of this petition constitutes a submission by the petitioner to the jurisdiction of the bankruptcy court and makes it a party to this bankruptcy proceeding.

The order to be entered herein must so recite and provide.

The trustee is, of course, an officer of this court and subject to its jurisdiction. In re Morgan Drug Co. (D. C.) 37 F.(2d) 419, 420.

Thus this court will have full control of the principal parties to the foreclosure suit, and, consequently—if I may so phrase it—of the traffic signals to be given therein.

V. The sequestration of rents and profits sought by the petitioner under the assignment clause of the mortgage cannot be dated back to the filing of the bankruptcy proceeding, but must date from the entry of the order on this petition. Freedman Savings & Trust Co. v. Shepherd, 127 U. S. 494, 502, 503, 8 S. Ct. 1250, 32 L. Ed. 163; Sullivan v. Rosson, 223 N. Y. 217, 225, 119 N. E. 405, 4 A. L. R. 1400; In re Brose (C. C. A. 2) 254 F. 664, 665-667.

VI. The further conditions on which the leave to commence a foreclosure suit on the equity side of this court depend, are that the order hereon shall provide also:

1. That there shall not be any entry of a decree of foreclosure and sale unless this court shall, on further application, allow such entry.

2. That there shall not be any receiver applied for in the foreclosure suit.

3. That the administration of the properties by the trustee continue as heretofore, and that the trustee may in effect act, after the foreclosure suit is instituted, as if it were receiver therein.

4. That this court shall retain exclusive jurisdiction to determine the rights of all parties to the funds which may come into the hands of the trustee in pursuance of the provisions of the last preceding paragraph, and that any and all proceedings for the marshaling of such funds shall be had in this bankruptcy court on such terms and conditions and in such manner as this court may direct, and be subject to such expenses of administration of the bankrupt's estate and allowances to those therein concerned as this court may find appropriate and proper.

VII. The conditions thus outlined must be included in the order to be entered herein, because they provide for two matters essen-

tial to the interests of all the parties involved in this multi-partite proceeding: (1) continuity of the management of the mortgaged properties, and (2) proceedings in the only appropriate and convenient forum for the marshaling of any assets which may come into the hands of the trustee.

Settle order on three days' notice to the attorneys for the trustee and the attorneys for the creditors' committee.