**RESOLUTION TRUST CORPORATION, as Receiver for First Federal Savings Association of Toledo, Plaintiff,**

v.

**FOUNTAIN CIRCLE ASSOCIATES LIMITED PARTNERSHIP, et al., Defendants.**

**No. 91CV–7417.**

United States District Court, N.D. Ohio, W.D.

May 23, 1992.

David C. Tryon, Hugh E. McKay, Porter, Wright, Morris & Arthur, Cleveland, Ohio, for plaintiff.

Martin D. Carrigan, Fuller & Henry, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, Senior District Judge:

This cause is before the Court on plaintiff, Resolution Trust Corporation's (as Receiver for First Federal Savings Association) ("RTC"), motion for appointment of a Federal Equity Receiver pursuant to Fed. R.Civ.P. 66, to collect rent payments and manage real estate during the pendency of this foreclosure action. For the reasons that follow, the motion is granted.

On July 19, 1991, RTC filed a complaint for money damages, foreclosure, and demand for receiver against defendants, Fountain Circle Limited Partnership, et al. ("FCLP"). RTC holds mortgages on real property located at 3101 Navarre Avenue, Oregon, Ohio, which were entered into by FCLP with First Federal Savings of Toledo. These mortgages secure payment of certain promissory notes in the aggregate principal amount of $2,962,669.54, the total amount alleged due and owing on these notes including interest and late charges is $3,855,168.31.

On May 6, 1992, this Court found service was effected on April 21, 1992, as to defendants FCLP and David Finkel. Although, as FCLP's counsel note in their answer, service was outside of the 120 days required by Fed.R.Civ.P. 4(j), this Court nevertheless found service effective. The Court found good cause under the rule for the delay, namely, the defendant's apparent attempts at evading service. FCLP, through counsel, seem to take every opportunity for delay in this matter. Presumably this is zealous representation of their client's interests, and not "... interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11.

FCLP moved for an oral hearing on this motion. The Court denied the motion in its previous order. A district court is not required to conduct a hearing on an appointment of receiver where the record discloses sufficient facts for the court to render a decision. *Bookout v. Atlas Financial Corp.*, 395 F.Supp. 1338 (N.D.Ga. 1974), *aff'd*, 514 F.2d 757 (5th Cir.1975); *Haase v. Chapman*, 308 F.Supp. 399 (W.D.Mo.1969).

### I.

Although it is clear that a receivership is not an end in itself, there is no doubt that a court of equity has the power to appoint a receiver when the appointment is "ancillary to some form of final relief

which is appropriate for equity[ ]." *Gordon v. Washington*, 295 U.S. 30, 38, 55 S.Ct. 584, 588, 79 L.Ed. 1282 (1935).

"The appointment of a receiver is considered to be an extraordinary remedy that should be employed only in cases of clear necessity to protect plaintiff's interests in the property." 12 Charles A. Wright & Arthur P. Miller, *Federal Practice and Procedure* § 2983, at 21 (1973); *Commodity Futures Trading Com. v. Comvest Trading Corp.*, 481 F.Supp. 438, 441 (D.Mass.1979).

■ Both parties have cited to state law in their memoranda in support of their respective positions. While the proposition is correct that a federal court will look to state law for guidance in a case where there is an absence of substantial federal precedent, the Court finds in the present case, federal law is sufficient to resolve the issue. *See* 12 Wright & Miller, *Federal Practice and Procedure* § 2983, at 29 (1973). Appointment of a Federal Equity Receiver is governed by federal law. Congress has specifically provided that a Federal Equity Receiver, once appointed, is to manage and operate the property according to the laws of the state where the property is located.[1] However, the appointment is to be measured by federal standards. *Midwest Sav. Ass'n v. Riversbend Associates Partnership*, 724 F.Supp. 661 (D.Minn. 1989). Federal courts are not bound by state law in determining whether such an equitable remedy is to be given. *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823 (3d Cir.1959).

■ Federal Rule 66 provides that the practice is to be in accordance with past practices in the United States Courts.[2] Courts contemplating appointment of a receiver have considered a number of factors.

Most important of these factors are the adequacy of the security and the financial position of the mortgagor.

The Ninth Circuit in *View Crest Garden Apartments Inc. v. United States*, 281 F.2d 844 (9th Cir.1960), *cert. denied*, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960), held that a receiver could be appointed to collect rents pending foreclosure if the district court was satisfied that the security was inadequate or adequacy was substantially doubtful, and that the mortgagor was insolvent or of doubtful financial standing.

The First Circuit has stated that:

... [A] receiver, even of rents and profits, will not generally be appointed on the application of a mortgagee in a suit to foreclose except upon a "sufficient showing" of two matters: (1) that the mortgaged property is inadequate security for the debt with interest and costs of suit, and (2) that the mortgagor or other person liable for the debt is insolvent, beyond the jurisdiction "or in such doubtful financial standing that an execution against him for any deficiency would be unavailing." And to warrant the appointment of a receiver to manage and operate mortgaged property pending foreclosure, as well as only to collect its rents and profits during that time, more than the above matters must appear.

*Garden Homes Inc. v. United States*, 200 F.2d 299, 301 (1st Cir.1952) (quoting 4 *Pomeroy's Equity Jurisprudence and Equitable Remedies* § 1514 (2d ed. 1919)).

In addition to the two factors that *View Crest* and *Garden Homes* suggest, Wright and Miller note that courts have also considered: (A) Fraudulent conduct on the

1. The intent of Rule 66 to apply federal law to the appointment of a receiver may be gathered from the note of the advisory committee. The note states that the final sentence of the Rule was added in 1948 to assure "the application of the federal rules to all matters except actual administration of the receivership estate itself." Fed.R.Civ.P. 66 Advisory Committee's Note.

2. The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules. Fed.R.Civ.P. 66.

part of the defendant; (B) an imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (C) an inadequacy of legal remedies; (D) a probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (E) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and, (F) whether plaintiff's interests sought to be protected will in fact be well-served by receivership. *See* 12 Wright & Miller, *Federal Practice and Procedure* § 2983 at 22–24 (1973).

In the *Garden Homes* case, the First Circuit indicated that there was a distinction between a situation justifying appointment of a receiver with power only to collect rents due during the pendency of a suit to foreclose, and a situation justifying appointment of a receiver with the power to manage the property pending foreclosure, as well as to collect rents. *Garden Homes Inc.*, 200 F.2d at 301.

■ It would appear that something more than mere inadequacy of the security and insolvency of the debtor are required for a court to bestow upon the receiver the power to manage the property in addition to the collection of rent. This something more has been described as a "superadded" condition making an immediate foreclosure and sale impractical. *Totten v. Harlowe*, 90 F.2d 377 (C.A.D.C.1937); *Garden Homes Inc.*, 200 F.2d 299. "[I]t may be any circumstance which commends itself to a court of equity as a reason for granting the relief sought." *View Crest Garden Apartments, Inc.*, 281 F.2d at 849.

## II.

RTC has offered evidence in support of their motion for appointment in the form of affidavits as well as other documents which have been properly authenticated. In response, FCLP argues: that defendants have not been properly served; that RTC has failed to prove inadequacy of the security; that RTC's exhibits are unreliable; and, that because the loan documents do not specify that a receiver can be ap-

pointed, this Court is without authority to do so.

■ As previously stated defendants have been served. Even if service had failed, case law indicates that a receiver may be appointed regardless. *See Shapiro v. Wilgus*, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355 (1932); *Arkansas Louisiana Gas Co. v. Kroeger*, 303 F.2d 129, 132 (5th Cir.1962) ("The power to make an ex parte appointment is properly exercised when the receivership is required by some urgent necessity....").

■ While arguing that RTC has failed to prove the inadequacy of the security, FCLP has submitted no evidence to contradict the affidavits and documents of RTC, nor have they submitted evidence supporting their belief that the security is adequate. Nothing in Rule 66 suggests that the burden on plaintiff in a motion for appointment of receiver need meet the standards of summary judgment. In fact, the form and quantum of evidence required is a matter of judicial discretion. *See U.S. v. O'Connor*, 291 F.2d 520 (2d Cir.1961); *Haase v. Chapman*, 308 F.Supp. 399 (W.D.Mo.1969). However, using the summary judgment standard as analogous, the Court is convinced that the movant here has met their burden.

■ The party moving for summary judgment bears the initial burden of production under Rule 56. That burden may be satisfied by either adducing affirmative evidence that negates an element of the non-movants's claim, or by " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Applying the summary judgment analogy to this case, RTC has met their burden. Once RTC has met their burden, it becomes necessary for FCLP to offer evidence or

set forth specific facts to refute RTC's allegations. FCLP has failed to do so.

With regard to FCLP's argument that RTC's evidence is inadequate, this Court finds the evidence persuasive and reliable.

■ The evidence shows that the security is inadequate. On December 11, 1991, a total of $3,855,168.31 remained outstanding with interest accruing daily. An October 3, 1990, appraisal estimates the value of the property, the security in this case, as between $3,225,000 to $3,513,000. The tax valuation of the property shows its value as $3,259,000. As RTC suggests and an affidavit supporting the suggestion indicates, the Toledo real estate market has continued to deteriorate and the property itself has deteriorated since the appraisal date.

The evidence also shows that the mortgagor is insolvent or at least in a doubtful financial position. The mortgagee, since March of 1990, has received no payments on the mortgage.

These two factors indicate that an appointment of receiver to collect rents is appropriate.

■ To warrant the appointment of a receiver to manage and operate mortgaged property pending foreclosure, as well as to collect rents, more than the above two factors must be present. In this case there is substantially more and it is appropriate to bestow upon the receiver the additional responsibilities of operation and management.

The property is in danger of being diminished in value. RTC suggests and affidavits support the suggestion that the property is not being maintained. As a result, the value of the property is decreasing, and the vacancy rate has increased to 28.24 percent, compared to an area-wide average of 2 to 5 percent.

The harm done to RTC by denying the appointment of a receiver outweighs any harm that would be done to FCLP by appointment. The harm to RTC, if appointment is denied, is the continuing devaluation of the property as well as the inequitable situation of being forced to sell the property at a loss, when possible improvements to the property might enable RTC to sell it at an appropriate price. FCLP is presumably collecting rents and profiting from the property, while refusing to properly maintain the property. The injury to FCLP, if a receiver is appointed, would consist of the loss of use of the foreclosure proceeding to further delay the transfer of the property and the profits from this delay. Any harm to FCLP in appointing a receiver is minimal. Appointment of a receiver is not a substantive right, but is a remedy that is ancillary to the primary relief, in this case, foreclosure. Appointment does not have a direct effect on the final outcome of the suit. Therefore, FCLP's substantive rights remain unaffected by the appointment.

Another factor to consider is the plaintiff's probable success and possibility of irreparable injury to the plaintiff's interest in the property. The probability of RTC's success is very high. FCLP only argues that they have not been properly served. In their answer, they admit to executing the notes and their failure to pay the notes.

The Court also finds a potential of irreparable injury should a receiver not be appointed. Due to the declining real estate conditions in Toledo and the poor maintenance of the property discussed supra, RTC will be further injured should appointment not take place. There also appears to be a question as to whether the notes are nonrecourse notes.

Finally, the plaintiff's interests will be served by appointment of a receiver. It would enable RTC to receive the rent payments during the pendency of these proceedings to reduce their loss. It would also enable RTC to apply the rent payments to the maintenance of the property in the hope of receiving a higher sale price in foreclosure.

FCLP further argues that "absent specific authority in any documents, the appointment of a receiver, an equitable remedy, is not permitted. *See* Advisory Committee Note of 1948 to Amended Rule 66, 7 Moore's Federal Practice § 66.01[4]. *View*

*Crest Garden Apartments, Inc. v. United States,* 281 F.2d 844 (9th Cir.1960)." FCLP's Memorandum In Opposition To Plaintiff's Motion For Appointment Of Receiver at 7.

Upon reviewing 7–pt. 2 Moore's Federal Practice § 66.01[4] and the Advisory Committee Note, it is by no means obvious that the proposition suggested flows from the cited authority as the introductory signal would indicate. That paragraph and note both deal with suits brought against receivers and have nothing to do with the appointment of a receiver. In the *View Crest* case the loan documents did provide for appointment of a receiver, but upon a careful reading of the case there is no suggestion that it is necessary. In fact, this Court reaches the opposite conclusion.

### III.

Accordingly, the Court grants RTC's motion for the appointment of receiver to collect rents and to operate and manage the property and notes its decision would be the same even if it were to apply state law.

Therefore, for the reasons stated herein, good cause appearing, it is

Ordered that RTC's Motion For Appointment Of Receiver Is Granted.

Further Ordered that Each Of The Parties Shall Submit Three Suggestions For A Receiver Within Twenty Days Of The Filing Of This Order.

Further Ordered that Each Party Shall Submit A Proposed Order For The Appointment Of Receiver Within Twenty Days Of The Filing Of This Order. The Proposed Order Shall Outline The Duties Of The Receiver In Accordance With This Opinion And Fed.R.Civ.P. 66.

IT IS SO ORDERED.