**J.L. SUMPTER and Shaundra Sumpter, Plaintiffs and Counter-defendants,**

v.

**UNITED STATES of America, Defendant and Counter-plaintiff.**

No. 01–10214–BC.

United States District Court, E.D. Michigan, Northern Division.

April 1, 2004.

titled in the names of the plaintiffs. The Court determined that valid federal tax liens attached to the interest of Jerry Sumpter in six parcels of certain real estate, which the Court found to be a one-half interest in each of those six parcels "subject to appropriate set-offs for reimbursement for expenses ... as may be determined by the Court at a later time." The Court instructed each party to file a brief addressing (1) the value of the six lots, (2) the appropriate manner of disposition of the property, (3) the manner of calculating and the amount of the set-off for reimbursement to which the plaintiffs may be entitled, and (4) the distribution of the proceeds. After reviewing the parties' submissions, the Court now holds that the tax liens attach to the property at the time they were filed and the government may assert its interest against its aliquot share of the present value of the property, the plaintiffs are entitled to credit for the payment of expenses to maintain the property over the years, and it is appropriate to appoint a receiver to determine the present value of the property and sell it or make other arrangements to satisfy the government's interest.

### I. Value of the property

The plaintiffs contend that the government is not entitled to any judgment because under Mich. Comp. Laws § 566.19, which was in effect at the time of the transfer, a creditor, such as the Trust, who paid fair value for the property and did not have knowledge of the fraud, may enforce the conveyance even against the defrauded creditor. The government acknowledges that the Court found that the Trust paid fair consideration for the six parcels at issue and had no knowledge of the fraud, which it characterizes as *dicta* (incorrectly, since the finding was necessary to the decision of whether the plaintiffs are entitled to credit for expenditures they made

Joseph Falcone, Joseph Falcone Assoc., Southfield, MI, for Plaintiffs and Counter Defendants.

James A. Brunson, U.S. Attorney's Office, Bay City, MI, Michael W. Davis, U.S. Department of Justice, Washington, DC, for Defendant and Counter Claimant.

### SUPPLEMENTAL OPINION

LAWSON, District Judge.

In an opinion and order dated February 5, 2004, the Court found in favor of the United States on part of its claim to assert a federal tax lien on certain real property

to maintain the property), and suggests that this language must be reconciled with the finding that Jerry Sumpter fraudulently transferred the six parcels.

■ Mich. Comp. Laws § 566.19 states: Rights of creditors whose claims have matured

(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser;

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

(2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

The statute addresses conveyances deem fraudulent because they were made for less than fair value. However, the Court found that Jerry Sumpter's transfers of the six parcels of real estate were fraudulent for another reason: he made the conveyances with the actual intent to defeat the IRS's claim against him and hinder collection. The amount of consideration paid under such circumstances is immaterial. When such a transfer by a debtor is fraudulent, it is void as against the creditor.

Similarly, the plaintiffs contend that the government's tax lien against Jerry Sumpter's asset is ineffective as to them because 26 U.S.C. § 6323(a) provides that a federal tax lien cannot have priority over a good faith purchaser unless the federal tax lien is recorded prior to the filing of the purchaser's deed or mortgage, and the government did not record its liens until after the transfer. This argument ignores the Court's prior determination that the transfer was fraudulent and thus void as to the government. The date of recording the lien therefore is immaterial.

The plaintiffs next argue that if the transfer is to be ignored, the value of the IRS lien must be fixed as of the date of the transfer in 1988, at which time the plaintiffs suggest the fair market value of the property was approximately $117,800. The plaintiffs cite *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958), in support of their argument. The weight of authority, however, requires a different holding.

■ The general rule is that federal law governs the priority of tax liens that compete with other claims to property, *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), but state law defines the nature of the property interest to which the lien attaches. *United States v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). In *Bess*, the Court was called upon to determine the competing claims to a policy of life insurance that the deceased, delinquent taxpayer owned at the time of his death. The Court held that the tax lien under 26 U.S.C. § 3670 attached only to the property that the taxpayer possessed during his lifetime. In the case of life insurance, the taxpayer could not possess the death benefit while alive, so the tax lien attached only to the cash value of the policy. *See Bess*, 357 U.S. at 55–56, 78 S.Ct. 1054.

*Bess* does not suggest, however, that the government is not entitled to the appreciated value of property to which a lien attaches. In *Cardinal v. United States*, 26 F.3d 48 (6th Cir.1994), the Sixth Circuit clearly stated that a "tax lien attaches to whatever equity interest the taxpayer has

in the property" and "[t]he value of the equity interest depends on the *fair market value* of the property." *Id.* at 49 (emphasis added). The Third Circuit reached a similar holding in *United States v. Avila*, 88 F.3d 229 (3d Cir.1996). In that case, the delinquent taxpayer divested himself of property for less than fair value after a tax lien came into being. The transferee argued that she took the property subject only to a lien on the government's interest valued at the time of the transfer. The court of appeals rejected that argument. The court stated that " '[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere.*' " *Id.* at 233 (quoting *Bess*, 357 U.S. at 57, 78 S.Ct. 1054). The court held that because *Bess* prohibits "[f]ixing the value of the lien at the time the taxpayer transfers the property," *ibid.*, the tax lien attached to the "appreciated value of [the taxpayer]'s former interest" in the property. *Id.* at 234. *See also Han v. United States*, 944 F.2d 526 (9th Cir.1991) (holding that "[a] tax lien 'shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time' ") (quoting 26 U.S.C. § 6322 (1988)); *United States v. Blakeman*, 997 F.2d 1084, 1092–93 (5th Cir.1993) (rejecting the taxpayer's argument that tax lien's value was limited to value at lien's attachment date).

█ The precedents compel the same result here. A lien attached to Jerry Sumpter's property as of the date of each assessment of delinquent federal income taxes. *See* 26 U.S.C. §§ 6321, 6322. Although Sumpter attempted to convey the six parcels before the tax lien was perfected by recording, the transfer was fraudulent and has been set aside by the Court with respect to Sumpter' one-half interest in the property. The lien attaches, therefore, to the property presently, and the government is entitled to today's fair market value, subject to adjustments discussed below.

## II. Disposition of the property

Once it is determined that a valid tax lien exists, the court "may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c); *see Hatchett v. United States*, 330 F.3d 875, 884 (6th Cir.2003). The court may also appoint a receiver to enforce the tax lien "at the insistence of the United States." 26 U.S.C. § 7403(d). That action is particularly appropriate when innocent third parties retain an ownership interest and there exists "the possibility that [they] will be harmed by the effort [to sell the property]." *United States v. Rodgers*, 461 U.S. 677, 709, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

█ The government has taken the position in its supplemental briefing that a receiver should be appointed to facilitate the sale because it would likely result in a substantially higher sales price, which would benefit both parties. Alternatively, the government suggests that the plaintiffs could agree to pay the government an amount equal to the value of fifty percent interest in the subject property at this time. The Court agrees that a receiver will advance the interests of the parties, and one will be appointed to determine the fair market value and make arrangements to satisfy the government's lien interest by sale of the property or otherwise.

## III. Calculation of set-offs and credits

█ The government contends that the plaintiffs are not entitled to reimbursement for the payment of taxes and other expenses to maintain the property because

federal law does not give those expenses priority over the government's tax lien. The Court has already held otherwise in its Opinion dated February 5, 2004, but the government contends that state law principles of equity as applied to the law of trusts must yield to federal law when determining priority of interests under the Internal Revenue Code. The Court previously has observed that federal law governs the priority of tax liens versus other claims to property, *Aquilino*, 363 U.S. at 513–14, 80 S.Ct. 1277, but that rule does not change the result in this case: the taxes that the plaintiffs paid actually have priority over the tax lien as a matter of federal law. *See* 26 U.S.C. § 6323(b)(6)(A) (providing that *ad valorem* property taxes have priority over a federal tax lien "[e]ven though notice of a lien imposed by section 6321 has been filed"). To the extent that the plaintiffs paid the property taxes on the entire six parcels, they are entitled to reimbursement by the government for its share.

The plaintiffs, however, claim that they are entitled to set off one-half of all *ad valorem* taxes assessed against the property even if they have not yet been paid. In addition, they claim credit for expenses on the four vacant lots in the amount of $7,010, which includes sprinkler systems, grass cutting, and the like, but they have not furnished receipts or other documentary proof for these expenses. Likewise, for the Moonlight Bay and Bangor Township properties, the plaintiffs acknowledge receipt of rents but seek to set off expenses including management fees that either represent the plaintiffs' own furnished services or fees paid for which there are no receipts.

■ The Court finds that the plaintiffs must account to the government for a share of the rental income adjusted for expenses that can be proven. The Court will not credit expenses for which there is no documentary proof because the Court is not convinced of the accuracy of the claimed expenses or the amounts. The government's share of the proceeds of the sale of the property will be reduced by the property taxes owing, but if the property is not sold the plaintiffs are not entitled to credit for property taxes they never paid.

Based on the documentary evidence presented in the case, *see* Pls.' Ex. G, the Court finds that the taxes paid and owing, respectively, on the six parcels of property are as follows:

A. Land in Township of Iverness, County of Cheboygan:
   1. Taxes paid (1988–2001) = $1,566.00
   2. Taxes unpaid (1988–2001) = $698.03
   Total taxes paid = $1,566.00 /2 = **$783.00**
B. Land in Township of Benton, County of Cheboygan, Gilpin Road:
   1. Taxes paid (1988–2001) = $662.53
   2. Taxes unpaid (1988–2001) = $361.98
   Total taxes paid = $662.53 /2 = **$331.26**
C. Land in the Township of Benton 10841 S. Moonlight Bay
   1. Taxes paid (1988–2001) = $7,666.37
   2. Taxes unpaid (1988–2001) = $3,820.77
   Total taxes paid = $7,666.37 /2 = **$3,833.18**
D. Land in the Township of Benton, Township of Cheboygan, 1195 Sharill Lane:
   1. Taxes paid (1988–2001) = $2,139.40
   2. Taxes unpaid (1988–2001) = $901.46
   Total taxes paid = $2,139.40 /2 = **$1,069.70**
E. Land in Township of Benton, 10765 Moonlight Bay
   1. Taxes paid (1988–2001) = $18,400.00
   2. Taxes unpaid (1988–2001) =$8,642.33
   Total taxes paid = $18,400.00 /2 = **$9,200.00**
F. Land in the Township of Bangor, County of Bay, 1106 White Street, Bay City
   1. Taxes paid (1990–2003) = $11,887.78
   2. Taxes unpaid (1988–2003) = $12,124.31
   Total taxes paid = $11,887.78 /2 **$5,943.89**

The total taxes paid by the plaintiffs on the six parcels of land, therefore, is $42,322.06. The plaintiffs are entitled to a credit of one-half of that amount, that is, $21,161.03.

The plaintiffs acknowledge that the house on Moonlight Bay in Cheboygan was rented intermittently during the sixteen-year period since the transfer in 1988. *See* Pls.' Ex. D, H. The total amount of rent received equals $69,566. Total rents re-

ceived for house in Bay City (Bangor Township property), equals $66,592.50. The Court finds from the documentary evidence that the expenses for renting the Cheboygan house totaled $4,530.90 for insurance [1], see Pls.' Ex. I, $1,878 for roof repair, see Pls.' Ex. K, $388 for bathroom repairs, see Pls.' Ex. L, $726.59 for siding repairs, see Pls.' Ex. M, and $737.86 for door repairs, see Pls.' Ex. N, for a total of $8,261.35. Expenses for renting the Bay City house totaled $1,009.00 for insurance [2], see Pls.' Ex. P, and $1,492.23 for carpet installation [3], see Pls.' Ex. Q, for a total expense amount of $2,501.23. There are no receipts for the other expenses claimed by the plaintiffs. The net rents received on the two improved properties during the relevant period amounts to $125,395.92. The government, by virtue of its tax lien on one-half interest in the property, is entitled to $62,697.96 as its share of the net rents.

Finally, the plaintiffs have established to the Court's satisfaction that they paid off prior liens on several of the parcels for purchase money encumbrances that had priority over the federal tax liens. They paid $13,000 on a mortgage on the Moonlight Bay property, see Pls.' Ex. B; and $6,823.70 on a land contract on two vacant parcels, see Pls.' Ex. C, for a total of $19,823.70. The government's share of that expense is $9,911.85.

■ The plaintiffs argue that there should also be an adjustment made in their favor for the amount the Trust essentially paid to Jerry Sumpter for the six parcels of property at issue ($45,000) plus interest. As discussed in the Court's February 5, 2004 Opinion, the Trust loaned Jerry and Santina Sumpter $90,000 in January 1988 in return for a mortgage on the six parcels of property. Jerry Sumpter then sought to repay the loan by conveying the six parcels to the Trust; however, as discussed above, the Court found that the transfer constituted a fraudulent conveyance by Sumpter because it was made with the intent to defeat the IRS's claim against him and hinder collection. Michigan's fraudulent conveyance statute in effect at the 'time of the transfer provides that in such a situation, the creditor, the United States, may have the conveyance set aside to satisfy its tax lien against Sumpter, see Mich. Comp. Laws § 566.19(1)(a), and also provides that the purchaser of the property may "retain the property . . . as security for repayment." Mich. Comp. Laws § 566.19(2). The right to retain the property, however, does not create a priority to the detriment of the defrauded creditors in such circumstances. It would make little sense to create a remedy by setting aside a conveyance found fraudulent because it was intended to hinder collection of a creditor's debt, and then further hinder the creditor by subordinating its interest to that of the transferee. Rather, the plaintiffs' remedy as to the $45,000 (plus interest, if applicable) the Trust paid for the land is against the fraudulent transferor, Jerry Sumpter, and their "security" established by Section 566.19(2) grants a priority as to him. The plaintiffs may very well be entitled to recoup the amount the Trust "purchased" for the property, but they must seek this amount from Jerry Sumpter. Consequently, the Court will not set off the amount the Trust purchased for the property plus any applicable interest

---

1. Plaintiffs claim amount is $7,200. The Court finds no source for this figure. Also, the plaintiffs claim $2,400 for a bathroom renovation and point the Court to their Exhibit J. However, no such document is found at Exhibit J.

2. Plaintiffs claim amount is $8,000. However, receipts for insurance only total the above figure.

3. Plaintiffs claim amount is $1,995. The Court finds no source for this figure.

against the government's interest in the property.

To summarize, the government's share of the net rents on the property is $62,697.96, against which expenses must be deducted for taxes paid of $21,161.03, and debt retirement of $9,911.85. The net amount due the government is $31,625.08. This net amount must be added to one-half the fair market value of the properties to satisfy the government's lien interest in the six parcels.

## IV. Distribution of the proceeds

A federal court exercising equitable powers has the authority to appoint a receiver when the appointment is "ancillary to some form of final relief which is appropriate for equity[ ]." *Gordon v. Washington,* 295 U.S. 30, 38, 55 S.Ct. 584, 79 L.Ed. 1282 (1935). Although "[t]he appointment of a receiver is considered to be an extraordinary remedy that should be employed only in cases of clear necessity to protect plaintiff's interests in the property," 12 Charles A. Wright, Arthur P. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983, at 24 (2003), here the parties have agreed that such an appointment would serve their interests.

"Appointment of a Federal Equity Receiver is governed by federal law." *Resolution Trust Corp. v. Fountain Circle Associates Ltd. Partnership,* 799 F.Supp. 48, 50 (N.D.Ohio 1992). *See also* 28 U.S.C. §§ 959, 2001; Fed.R.Civ.P. 66.

The Court will appoint a receiver to ascertain the fair market value of the six parcels of property, arrange to satisfy the government's federal tax lien in a manner agreeable to the parties, or if no agreement is reached, sell the property and pay expenses according to the priority set forth in 26 U.S.C. § 6323, after which one-half of the net proceeds plus $31,625.08 shall be conveyed to the government, provided that the amount tendered does not exceed the outstanding tax obligation of

Jerry Sumpter, which is $513,349.51 plus and applicable statutory additions.

## V. Conclusion

For the reasons outlined above, a judgment will enter incorporating the findings and conclusions in the Court's Opinion dated February 5, 2004 and this Supplemental Opinion.